MONTGOMERY COUNTY, MARYLAND ET AL. *v.*
ERTTER ET UX.

[No. 157, September Term, 1963.]

*Decided January 30, 1964.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT, MARBURY and SYBERT, JJ.

*Lawrence E. Speelman, Assistant County Attorney for Montgomery County,* with whom was *Robert G. Tobin, Jr., County Attorney,* on the brief, for the appellants.

*C. Edward Nicholson,* with whom was *John E. Oxley* on the brief, for the appellees.

MARBURY, J., delivered the opinion of the Court.

Authorized by Section 72-85 of the Montgomery County Code (1960) the appellants, Montgomery County and the County Council of that county sitting as the district council, ask us to review an order of the Circuit Court for Montgomery County reversing the decision of the district council. By resolution duly passed, the district council had denied a zoning application of the appellees, Mr. and Mrs. Frank Ertter, which requested rezoning of a tract of land from R-R (rural residential) and R-90 (one-family detached residential) zones to R-20 (multiple-family medium density residential). The appellants on this appeal raise two interrelated questions which we shall treat together. Combined they are: From the evidence of record, was the decision of the district council fairly debatable and, if so, did the circuit court substitute its judgment for that of the council in its appellate review of the council's action denying the rezoning requested.

The property sought to be rezoned, some 7.4 acres, is situated immediately outside the corporate limits of Rockville. It appears as a long narrow strip of land running in a northwesterly direction from Norbeck Road. Its shape resembles a meat cleaver with the butt of the "handle" sixty feet wide touching the road and extending for about four hundred and

sixteen feet from the road, where the "handle" widens to about one hundred and sixty feet for a distance of about two hundred and eighty-nine feet, then the "blade" widens to approximately three hundred and fifty feet for a distance of about seven hundred and fifty feet. The longest dimension of the property is the top of the "cleaver", including the "handle", which is the easternmost boundary of the property and which is about fourteen hundred feet long.

Stipulated by the parties in the circuit court was the following zoning information: "The Master Zoning Atlas effective January 1, 1954, reveals that subject property was classified as 'R-A', residential agricultural, which permitted one single family dwelling to each 20,000 square feet of land. At that time it was under the jurisdiction of the Upper County Planning Commission. When the Upper County Planning Commission was abolished in 1958 the same classification was retained. However, being designated as 'R-R', rural residential, one single family dwelling to each 20,000 square feet of land."

The tract in controversy is bounded on the north, east and west by land in the R-R zone and to the south is land zoned R-90. Generally to the southwest and abutting a portion of the subject tract is the Rockville Cemetery. Between the cemetery and the "handle" of the parcel is the United States Army Reserve Training Center (armory), a permitted use in the R-R and R-90 zones. The land to the north and east of the property is undeveloped and is zoned R-R.

A master plan of zoning and highways for the Upper Rock Creek Watershed was adopted by the Maryland-National Capital Park and Planning Commission (Planning Commission) on April 26, 1961, as a part of the General Plan for the physical development of the Maryland-Washington Regional District within Montgomery County. This plan recommended the R-R and R-90 zones for this controversial tract.

At the public hearing on the zoning application held February 8, 1960, four people testified on behalf of the appellees: Mr. Ertter, one of the appellees; their attorney; the attorney for an adjoining landowner; and a land planner, Mr. Sanders. The gist of the testimony was that the request for rezoning was predicated primarily and essentially upon the fact that the pres-

ence of the armory, together with its attendant activity, had so changed the character of the immediate neighborhood that rezoning was in order. Mr. Ertter testified that he had purchased the property in January 1957 to develop for single-family homes in the $20,000 to $22,000 price range, and that the property was so suited at the time of his purchase. Subsequent to his purchase of 8.49 acres in 1957 one acre of his property was condemned by the United States government and the armory building, with an attendant motor shed was constructed and a portion of the government tract was paved. He stated that he would not now risk the capital in building residences on his property because he thought that prospective purchasers would be reluctant to buy a house so near the armory.

There was also testimony as to a hospital in the vicinity and a swimming pool. The hospital referred to is the Easter Seal Treatment Center for Crippled Children. Very little testimony concerning the swimming pool is contained in the record. In fact, its exact location and character were not demonstrated.

Testifying in opposition to the zoning was Mr. Kurtz Weiser (who is identified by the appellants as a resident in the vicinity of the subject property, though the record shows only his street address), who stated that there was no need for further apartments in the Rockville vicinity; that there were no shopping or public transportation facilities in the area; and that, in his opinion, the local elementary school might have to resort to part-time classes if the rezoning were granted.

The Planning Board of the Maryland-National Capital Park and Planning Commission and its technical staff recommended denial of the application for the reasons that the request did not conform to the master plan for the Upper Rock Creek Watershed and that there had been insufficient change in the character of the neighborhood to warrant the rezoning.

Responding to a request from the planning board, the Mayor and City Council of Rockville, through the Rockville Planning Commission, recommended denial of the application.

The authority under which the circuit court heard the appeal is the same Section 72-85 of the county code which allows an appeal here. The function of the circuit court is there stated in the following general language:

"In Montgomery County, a final decision of the district council on any application for a map amendment may, within 30 days after the decision is rendered by resolution of the council * * * be appealed by any person aggrieved by the decision to the circuit court for the county, which shall have power to affirm the decision of the district council or, *if such decision is not in accordance with the law, to reverse such decision,* with or without remanding the case for rehearing, as justice may require." (Emphasis added.)

We think it clear that under this section the function of the reviewing court is limited. That court may set aside, as not in accordance with law, action of the district council which is arbitrary, illegal or discriminatory. It may thus set aside action of the district council which is not founded upon any substantial evidence, but the court may not substitute its own judgment on the facts for that of the district council. *Robertson v. Board of Appeals,* 210 Md. 190, 122 A. 2d 751.

More specifically under the Montgomery County Code provision above cited the function of the reviewing court is only to determine whether the zoning authority, the district council, has properly applied the governing law to the facts. The controlling law here is the long established rule that where an application is made for reclassification of a tract of land from one zoning classification to another, there is a presumption that the classification established by the original zoning was well planned and arranged and was intended to be more or less permanent, subject to change only where there are genuine changes in conditions in the locality. Before a zoning board rezones a property there must be proof either of mistake in the original zoning or that the character of the neighborhood has changed to such an extent that such reclassification ought to be granted. Among the more recent of innumerable cases recognizing this are *Shadynook Imp. Assn. v. Molloy,* 232 Md. 265, 192 A. 2d 502; *Alvey v. Michaels,* 231 Md. 22, 188 A. 2d 293; *Bishop v. Bd. of Co. Comm'rs,* 230 Md. 494, 187 A. 2d 851; and *West Ridge, Inc. v. McNamara,* 222 Md. 448, 454, 160 A. 2d 907, and cases cited therein.

Here, the applicants admit that they relied primarily (indeed, we think, almost entirely) on a single change, the construction of the armory, a permitted use under the existing zoning of the property as a basis for the change in zoning which they sought. In addition to the testimony of a citizen opposing the rezoning, the district council had before it and considered the recommendations above referred to of the planning board and of the city government that the application be disapproved because of its inconsistency with the general plan and the lack of sufficient change in conditions. We can not say that the council's action in denying the application on the record before it was in any way arbitrary, illegal or discriminatory, or that it was not at least "fairly debatable," to quote a phrase often used in our decisions.

We might add that the appellees did not offer to prove that the denial of the rezoning request deprived them of all beneficial use of the property, a recognized ground for rezoning. *Frankel v. City of Baltimore,* 223 Md. 97, 162 A. 2d 447. Clearly the fact it would be more profitable to the owners to use the land for multiple-family medium density residential is not controlling if it can be used reasonably for the purposes for which it is already zoned. *Reiskin v. Mont. County Council,* 229 Md. 142, 182 A. 2d 34; *Mont. Co. Council v. Scrimgeour,* 211 Md. 306, 127 A. 2d 528. The Ertters have resided for several years on the property in a single family residence.

Furthermore we do not think that the paving of an area of the armory lot, stressed by the appellees, made the necessity for rezoning the property less debatable, when that factor was considered by the district council.

From the record before us we think the heavy burden placed upon the appellees was not met by them. There was substantial evidence to sustain the determination of the district council in denying the rezoning. Whether that evidence was to be relied on, what inferences were to be drawn from it, and whether those which the council drew were right or wrong was beyond the scope of judicial review. *Wakefield v. Kraft,* 202 Md. 136, 96 A. 2d 27.

*Order reversed, costs to be paid by appellees.*