LEVY, ET AL. *v.* SEVEN SLADE, INC.

[No. 221, September Term, 1963.]

*Decided March 11, 1964.*

The cause was argued before HENDERSON, HAMMOND, HORNEY, MARBURY and SYBERT, JJ.

*Frank A. Kaufman* and *Leonard E. Cohen,* with whom were *Philip Heller Sachs, Fred K. Grant* and *J. Elmer Weisheit, Jr.,* on the brief, for the appellants.

*Kenneth C. Proctor* and *Joseph Sherbow,* with whom were *James J. Doyle,* and *Proctor, Royston & Mueller,* and *Sherbow, Shea & Doyle,* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

The Zoning Commissioner of Baltimore County denied an application for a change in classification and a special exception to permit the building of a high rise luxury apartment house on the south side of Slade Avenue, east of Reisterstown Road, and on appeal to the County Board of Appeals the hearing was

held before two of the three members, the third being disqualified. The Board divided one to one, and on the applicant's appeal to the Circuit Court for Baltimore County, Judge Turnbull, noting the problems caused by the split in the Board, felt there was no presumption of correctness of the denial of the application which resulted and that it therefore became incumbent on the Circuit Court to make its own independent determination of the facts as the record disclosed them. Having done this, Judge Turnbull's view was that there had been a change in the neighborhood since the adoption of the comprehensive zoning map in 1957 and that the use of the land for the proposed apartment house would not offend any of the six requisites to the granting of a special exception imposed by Sec. 502.1 of the Zoning Regulations of Baltimore County.[1]

At the threshold we must determine the effect of the even division of the County Board of Appeals. It is clear that one effect was to leave the denial of the application by the Zoning Commissioner in force, and to make the Board's order appealable to the Circuit Court.[2] *Montgomery County v. Walker*, 228

---

1. Sec. 502.1 of the Zoning Regulations of Baltimore County provides that it must appear before any special exception is granted that the use for which the exception is granted will not (a) be detrimental to the health, safety or general welfare of the locality involved; (b) tend to create congestion in the streets or ways; (c) create a fire or panic hazard; (d) tend to overcrowd land or cause undue concentration of people; (e) interfere with adequate provisions for schools, water, sewerage, transportation or other public requirements or conveniences; (f) interfere with adequate light and air.

2. The order of the Board was merely the following notation: "Feb. 5, 1963. Order of Board of Appeals—A two-man Board presided at this hearing, resulting in a split decision." The order of appeal filed by the applicant (the appellee here) in the Circuit Court read:

"This Appeal is from the decision * * * of the County Board of Appeals of Baltimore County dated February 5, 1963, by virtue of which the Order of the Zoning Commissioner of Baltimore County dated May 7, 1962, was automatically affirmed, one member of the Board being in favor of affirmance, a second member of the Board being in favor of reversal, and the Chairman of the Board having disqualified himself from sitting in such case."

Md. 574, 581, *et seq.,* and cases cited; *M. & C. C. of Balto. v. Biermann,* 187 Md. 514, 522.

The right of appeal from the Board to the Circuit Court stems from Code (1957), Art. 25A, Sec. 5 (granting express powers to a chartered county). By Paragraph U of Sec. 5 such a county has power to establish a county board of appeals provided that "any decision by a county board of appeals" may be appealed by an aggrieved party to the circuit court for the county "which shall have power to affirm the decision of the board, or if such decision is not in accordance with law, to modify or reverse such decision * * *." Sec. 501.4 of the Zoning Regulations of Baltimore County, providing for appeals from the Board to the Court, uses the exact language of Sec. 5 U of Art. 25A of the Code, in describing the functions of the Court in deciding an appeal from the County Board of Appeals.

It is our view that the Circuit Court, on appeal from a split decision of the Board, cannot make its own independent findings of fact but, rather, must decide only, as it must in appeals where there has been a unanimous or majority decision by the Board, whether, in the words of Art. 25A of the Code and Sec. 501.4 of the Baltimore County Zoning Regulations, the decision of the Board is or is not "in accordance with law." See *Montgomery County v. Ertter,* 233 Md. 414, 419, 197 A. 2d 135, 137, where we said, in reference to the statute which granted an appeal and gave power to reverse if the decision was not "in accordance with law," the following:

> "We think it clear that under this section the function of the reviewing court is limited. That court may set aside, as not in accordance with law, action of the district council which is arbitrary, illegal or discriminatory. It may thus set aside action of the district council which is not founded upon any substantial evidence, but the court may not substitute its own judgment on the facts for that of the district council."

In performing this task where there has been a split decision below, the court does not, it is true, have the advantage of the Board having made determinations of fact or of the expertise the law considers the Board to have in the solution of the

current zoning problem to the same extent it usually does. In the *Biermann* case, cited above, the applicable statute required the concurring vote of four of five members of the Baltimore Board for the granting of a permit for a filling station in a residential zone. Three members of the Board voted to grant the permit and two voted to the contrary. The Baltimore City Court reversed the Board and directed the permit to be issued. This Court reversed and reinstated the action of the Board, saying at p. 522 of 187 Md.:

> "We are inclined to agree that where disapproval rests upon a mere failure to obtain the concurring vote of four out of five members, the action cannot properly be described as that of a fact-finding body. In such circumstances it would be more accurate to say that approval is prevented by the exercise of a veto power. And negative action of this sort is clearly not entitled to the same weight, in considering the merits of a controversy, as a positive determination. But on the other hand, the statute requires concurrence as a condition precedent to the issuance of the permit, and failure to concur cannot be deemed as illegal action, even though it may defeat or qualify the other requirement of the statute that the Board act as a fact-finding body. It is our duty to reconcile conflicting provisions of the statute so as to give effect to both, where possible. * * * We hold that although the Board was precluded, by the adverse vote, from acting as a fact-finding body, this fact did not render its action a nullity, or open the question to unlimited review. The question before us is not whether there was substantial evidence before the Board to support a minority finding, but whether there was a reasonable basis in fact to support the refusal as an exercise of the police power. * * *

> "Considering the action of the Board as an exercise of delegated legislative, or quasi legislative, power, the scope of review is different and in some respects more limited than where the action is quasi judicial;

*e.g.*, the court must find that the result of the action is beyond the police power and deprives the applicant of property without due process of law. On this question the property owner has the heavy burden of overcoming the presumption of constitutionality of legislative action, even if the legislative body acted without evidence at all."

The *Biermann* holding was followed in the *Walker* case to which we referred earlier. The Courts of New Jersey, where statutes spelled out what the cases have made the law of Maryland, have come to the conclusions reached in *Biermann* and *Walker*. See *Miller v. Boonton Tp. Bd. of Adjustment* (Super. Ct. N. J.), 171 A. 2d 8, 13, where the Court said:

"In view of the legislative judgment, it follows that unless we accord the same presumption of validity to a 'statutory denial' as we would accord a denial resulting from a majority vote, the legislative purpose would be defeated. The result would be that the Superior Court would review the denial of a variance without giving sufficient weight to the expertise of the local board.

\* \* \*

"It must be concluded that the usual presumption of validity attaches to a 'statutory denial' of a variance. In other words, the presumption must be accorded the veto of the minority member. Consequently, the question on this appeal is whether the action of the minority member in voting against a variance was arbitrary, capricious or patently unreasonable."

*Griggs v. Zoning Bd. of Adjustment, Princeton* (Super. Ct. N. J.), 183 A. 2d 444, 447, reiterated the rule, saying:

"The general rule enunciated by our courts is that the decision of a local board of adjustment is presumptively correct and should not be set aside unless shown to be arbitrary, capricious or patently unreasonable. \* \* \* Incidentally, the presumption of validity is given the same legal effect by the reviewing

court whether the decision is by a majority of the board members or is the result of a statutory denial."

As the case before us came to the Circuit Court the application had been denied by the Zoning Commissioner, who said in his order of denial:

> "The testimony in this matter was voluminous but it would appear that Mr. Malcolm H. Dill, Director of the Office of Planning and Zoning, summed the matter up when he said the present request of the petitioner is premature.
>
> "There are many fine homes on Slade Avenue still occupied by their owners. Certain changes resulting from future road plans have not yet occurred. The present elevator apartment building at 11 Slade Avenue acts as an excellent buffer between commercialism on Reisterstown Road and the very fine living area on Slade Avenue.
>
> "For the above reasons the reclassification should not be had and the special exception should not be granted."

One member of the Board, as his opinion shows, accepted the views and conclusions of the Zoning commissioner (in addition to finding that congestion in the streets nearby would result if the application were granted), and the other member was of a contrary view. The inability of the Board to act affirmatively, which necessarily resulted from the divergent views of its two sitting members, produced a continuance of the denial of the application which the Zoning Commissioner had ordered, and the function of the reviewing court, under *Biermann* and *Walker*, was not to zone or rezone but only to decide whether the presumption of the correctness and constitutionality of the Board's quasi-legislative action had been overcome by the showing of the then appellant, the applicant, that there was no reasonable basis in fact to support the denial as an exercise of the police power.

We turn to a consideration of this question. The record shows that Slade Avenue runs for some two thousand feet between

Reisterstown Road and Park Heights Avenue. Reisterstown Road is zoned and used as commercial on both sides above and below Slade Avenue. At the northeast corner of the two streets is a bank, at the southeast corner is a filling station. To the east of the filling station is a large high rise luxury apartment house, known as "Eleven Slade," built several years ago by the applicant here.

To the east of Eleven Slade are two large lots, heavily wooded with old trees, improved by two large houses. The applicant bought these for two hundred fifty thousand dollars at the same time he bought the land for Eleven Slade, intending to erect on the lots the apartment house he now seeks leave to build (which would be twelve stories high, having two hundred fifty large apartments and provide parking space for five hundred cars). To the east of those lots are two fine residences, 3 Slade Avenue and 1 Slade Avenue, on large lots. South of Slade Avenue on the west side of Park Heights Avenue are three large old residences with spacious grounds. Just south of the last of these is the Oheb Shalom Congregation, most of the land of which and all buildings, but a small brick powerhouse, are in Baltimore City. On the north side of Slade Avenue, east of the bank, is a part of the golf course of the Suburban Club. To the east of that stand four expensive residences on large wooded lots. From there to Park Heights Avenue is land belonging to the Club. Across Park Heights Avenue, almost opposite Slade Avenue (which ends at Park Heights Avenue) are some twenty acres owned by the Baltimore Hebrew Congregation, improved by a temple and other buildings. To the north of the temple is a very fine old residence. Between Slade Avenue and Old Court Road to the north are many expensive modern houses on the east side of Park Heights Avenue. On the west side the land of the Suburban Club runs all the way from Slade Avenue to Old Court Road. The Club owns most of the land between Park Heights Avenue on the east and Reisterstown Road on the west, Slade Avenue on the south and Old Court Road on the north, using much of it for a golf course. Several years ago, the Club built a new clubhouse at a cost of over a million dollars.

The last comprehensive zoning map of the area was adopted on January 16, 1957, and all of the land mentioned east of the two corners of Reisterstown Road and Slade Avenue was zoned residential for individual homes (and the synagogues, Club and golf course which are permitted uses in such residential zones). In order to meet a burden, which it concedes it must meet if it is to prevail, the applicant seeks to show that there were mistakes in the original comprehensive zoning or changes in the character of the neighborhood since that zoning extensive enough to warrant a rezoning, or both. *Montgomery County v. Ertter, supra; Shadynook Imp. Assn. v. Molloy,* 232 Md. 265. The claims of original error were so insubstantial as to be almost fanciful and do not merit discussion. There are but two worthwhile claims as to change, and the trial judge considered only these. One is the reclassification of the land on which the apartment house known as Eleven Slade was built to R-A (the classification now sought for the adjoining land for the proposed apartment house) and the other is the construction of the Oheb Shalom Temple and its accessory school buildings, parking lot and powerhouse (an inconspicuous small brick building screened by trees and shrubs from nearby homes, as is the parking lot, both considerably to the west of Park Heights Avenue contiguous to the southern edge of the proposed parking lot in back of the apartment house now sought to be built on Slade Avenue).

The record supports the conclusions of the Zoning Commissioner and one of the Board members that the granting of the special exception for Eleven Slade was based on the theory that the apartment building would be a buffer between the commercial zoning and actual uses on Reisterstown Road and the fine residential area to the east.

Protesting neighbors in the present case say that the neighborhood residents accepted the building of Eleven Slade on this premise and understanding and not as a nose under the tent for the subsequent building of more apartment houses, and that it has worked satisfactorily as a buffer. Mullan, the principal owner of the applicant corporation and the builder of Eleven Slade, said of that apartment house: "I think it is an excellent buffer for those homes, yes."

The building of Eleven Slade after the adoption of the zoning map was not, in light of its understood function as a buffer, such a change as would require a rezoning of a neighboring tract of land for the same purpose and the zoning authorities who took that view had a reasonable basis in fact to support their refusal to rezone the applicant's land.

The weakness in the applicant's claim that the building of the parking lot and small powerhouse by the Oheb Shalom Congregation after the zoning map was put in effect in 1957 is that under Sec. 200.3 and Sec. 200.9 of the Baltimore County Zoning Regulations churches and other buildings for religious worship, together with their accessory buildings and uses, are permitted uses in a residential zone.

We held in the *Ertter* case that the building and frequent use of an armory and the paving and frequent use of an extensive area around it—as was permitted in the residential zone under consideration by the Montgomery County Zoning Ordinance—did not amount to a change in the neighborhood within the change test which has been applied by the decisions of this Court, and that the zoning authorities' denial of a request to rezone property nearby for apartment use was not "in any way arbitrary, illegal or discriminatory, or that it was not at least 'fairly debatable,' to quote a phrase often used in our decisions."

We think the rationale of the *Ertter* decision and the expression thereof which was just quoted are applicable here.

> *Order appealed from reversed, with costs, and order of Zoning Commissioner denying application of appellee here reinstated.*