KASLOW ET AL. *v.* MAYOR AND COUNCIL OF ROCKVILLE, MD.

[No. 412, September Term, 1963.]

160 

*Decided July 27, 1964.*

The cause was argued before Brune, C. J., and Hammond, Prescott and Horney, JJ., and Rutledge, J., Associate Judge of the Fourth Judicial Circuit, specially assigned.

*David E. Betts* for appellants.

*William A. Linthicum, Jr.* for appellee.

Brune, C. J., delivered the opinion of the Court.

The appellants, Kaslow and Rocks, as contract purchasers of 42.252 acres of land in the City of Rockville known as the Hampton Jones tract, filed an application in November, 1961, with the Mayor and Council of Rockville (the City) for the rezoning of this tract from the R-S (Residential Suburban)

classification to the R-30 (Multiple Family Residential, permitting apartment use) classification. After a hearing the City denied the application. The applicants first took an appeal to the Circuit Court for Montgomery County on the law side, but in view of the absence of any provision in the Rockville Zoning Ordinance for such an appeal the case was transferred at their request to the equity side of the Court. They then filed a bill against the City seeking: (a) a declaration that the resolution adopted by the City denying their application was null and void; (b) a mandatory injunction commanding the City to grant their application; (c) a prohibitory injunction enjoining the City from interfering with their use of the property for such uses as are permitted under the R-30 classification; and (d) general relief. The Circuit Court (Anderson, J.) dismissed the bill and the applicants appeal.

The appellants state two questions as presented by this appeal: first, whether the City's denial of an application to rezone must be supported by competent, material and substantial evidence; and second, whether the denial of their application was not supported by such evidence and therefore was arbitrary, capricious and illegal. The appellee appears to concede that action by a zoning body not founded upon any substantial evidence is not in accordance with law and may be set aside by a court, citing *Montgomery County v. Ertter,* 233 Md. 414, 419, 197 A. 2d 135, 137, but claims that the rule of *Board of County Commissioners of Prince George's County v. Oak Hill Farms,* 232 Md. 274, 192 A. 2d 761, which requires substantial evidence on the record as a whole to support zoning action (in that case the denial of an application) is not applicable. We see no conflict between *Ertter* and *Oak Hill,* and the distinction sought to be drawn by the appellee seems to be of no moment here. The appellee rests its defense of its refusal of rezoning primarily on the existence of substantial evidence to sustain its action. In *Montgomery County v. Kaslow,* 235 Md. 45, 200 A. 2d 184, we reaffirmed the rule of *Hedin v. Board of County Commissioners of Prince George's County,* 209 Md. 224, 236, 120 A. 2d 663, 668, that the Board could not base its action on the personal opinion of a member without support in the evidence for that opinion, and held that if the action of a

district council in denying rezoning were based, to any meaningful extent, upon evidence not before it of record, its decision would not be in accordance with law.

The application here was set for hearing before the Mayor and Council on February 20, 1962, but was continued to May 21, 1962, when it was heard. At the hearing the applicants offered the testimony of several qualified experts in support of their application. Their plan, to which they sought to bind themselves by a contract with neighboring landowners, contemplated four large, high grade apartment buildings with a total of 610 units and a suitable number of parking spaces for automobiles. They proposed to preserve many of the trees in the area and to adapt their buildings to the terrain. The only opposition to the application presented at the hearing was a report of the Rockville Planning Commission recommending that the application be denied. The appellants' counsel (who was a party to the agreement above mentioned) spoke as a nearby resident, as well as in his capacity as counsel, in favor of the application. One other neighboring property owner, speaking for himself and other members of his family, owning altogether about ninety-five acres, favored the application and expressed the view that the proposed apartments "might be better than other possible alternatives." The owners of another neighboring property later submitted a letter of protest, asserting that seven-story apartments were not needed in the neighborhood and were completely out of character with single family dwellings which were predominant in West Rockville.

The tract in question lies to the west of the center of Rockville at the intersection of State Route 28 (Montgomery Avenue) and Interstate Route 70-S (the Washington National Pike). Route 70-S is a major highway; Route 28, though important, is not wide west of Route 70-S. Route 70-S runs generally north and south (actually closer to north northwest and south southeast, or in terms of a clock face on an 11 o'clock -5 o'clock axis). Route 28 runs generally east and west. East of the intersection it runs a little south of due east; just to the west thereof it takes a decided turn to the northwest for about a half mile until it crosses the Rockville City limits and then turns more nearly west. The result is that the "southwest quad-

rant" of the intersection of Routes 28 and 70-S is nearly a semi-circle extending to the northwest as well as to the southwest of the intersection within the area covered by the Proposed Land Use Map dated September, 1960 included in the Master Plan Report submitted by the Planning Commission of the City of Rockville in that month. The subject property is in this quadrant or semicircle.

The Master Plan Report and its accompanying maps covered some areas in Montgomery County outside the city limits of Rockville. (See Code (1957), Art. 66B, § 15. The highly irregular outlines of the City in 1960, apparently due to annexations made from time to time at the request of individual property owners (see Master Plan Report, p. 8), doubtless made this extended projection necessary.) The existing zoning map as of January, 1960 showed all of the land within the corporate limits of Rockville and west of Route 70-S to be zoned R-S or R 90 (low or medium density residential). The Proposed Land Use Map of September, 1960 suggested only three changes in this regard. One was to designate a fairly large area lying between a north-south road and the western edge of the city for quasi-public buildings or open spaces. This area is at a considerable distance from the subject property—rather more than half a mile. The second change was to designate areas along streams for parks, playgrounds or like uses. A third was to designate a tract shaped like a piece of pie with its apex at the intersection of Great Falls Road and Seven Locks Road for restricted industrial use. This tract lies slightly to the west of Route 70-S and is about three-quarters of a mile south of the Hampton Jones tract. The Mayor and Council rejected this recommendation and refused to reclassify the tract from R-S to industrial use.

To the east and northeast of the intersection, for about a mile or more in any direction, the existing zoning in January, 1960 was all residential, some of it R-60, and much of it, including that directly across Route 70-S from the Hampton Jones tract, R-S. The Proposed Land Use Map of September, 1960 recommended somewhat greater density for this area, some zoning for public or quasi-public buildings and open spaces and some for parks or playgrounds in a stream valley to the northeast.

In the area to the northwest of the intersection, the new map proposed one relatively small general commercial area nearly a mile and a half to the west and outside the city limits, which seems of no significance here. Also outside the city limits of Rockville and at the next major intersection on Route 70-S north of Route 28 (being the intersection of 70-S with Shady Grove Road), this map proposed two restricted industrial areas, one in the triangle extending south or southwest of this angular intersection and the other in the southeast quadrant. This intersection is 1.8 miles from the intersection of Routes 70-S and 28, and the nearest point recommended for restricted industrial use is over a mile away.

At the time of the hearing before the Mayor and Council there had been three departures within the corporate limits of Rockville from the zoning existing in January, 1960 or from that recommended in September, 1960 in the vicinity of the Hampton Jones tract. One was the refusal to rezone for industrial use a tract to the south, which has been mentioned above. The other two are to the north of the tract, one on the west, the other on the east, side of Route 70-S. The one on the west side involves a rather large tract rezoned for industrial use, most of which appears to be outside the corporate limits of Rockville, but a part of which is inside. Its southern tip is about 800 feet from the point on Veirs Lane where access to that road is had from the Jones tract and about 1200 feet from the nearest point of the tract for which rezoning is here sought. This industrial tract has an irregular shape. Its southeastern line runs from the southern tip northeast to the western side of Route 70-S and then north on that highway for about 1700 feet inside the limits of Rockville and then for another 1600 feet outside those limits. The whole of this tract lies to the northeast of Route 28. On the east side of Route 70-S opposite a part of this industrial tract is the other tract where a departure from prior and planned zoning has occurred. This is wholly within Rockville. It is a smaller tract than the industrial area just referred to and has been rezoned from what appears to have been R-60 to R-30 zoning. R-30 permits apartment use.

Three areas all outside the corporate limits of Rockville have been rezoned for industrial use at the Shady Grove Road and Route 70-S intersection. Nothing is shown as to the use or zon-

ing of any of the tracts on the January, 1960 maps of existing use and zoning. The September, 1960 Proposed Land Use Map shows nothing as to the northwest quadrant. Industrial zoning in the northeast quadrant and in the southern (or southwestern) quadrant is shown, though that established in the latter differs to some extent from that proposed. A map submitted by the applicants also shows a tract to the west and slightly to the north of this intersection which has been rezoned as R-10 for apartments. Its relevance is not readily apparent, since it is more than two miles from the subject property.

The only other change in the neighborhood suggested by the applicants is that a church is proposed in the residential area directly across Route 70-S from the northern part of the subject property. Its relevance is also not clear. A church is a permitted use under any residential classification applicable under the Rockville Zoning Ordinance to the property where it is proposed to be built, and the church is only proposed, not built.

For purposes of this opinion we shall assume, as Judge Anderson concluded, that the evidence offered by the City at the hearing on the bill, which had not been offered at the zoning hearing before the Mayor and Council, and which was taken in the Circuit Court subject to exception, was not admissible in passing upon the validity of the City's action. (We do not, however, decide this question.)

The recommendation of the City Planning Commission and the reasons given in support of the recommendation are characterized by the appellants as "opposition without evidence" (*Board of Co. Commrs. v. Oak Hill Farms, Inc. supra*, 232 Md. at 280), but as Judge Anderson pointed out, there was other material properly before the Mayor and Council bearing upon its action.

The Planning Commission in its opposition to the appellants' application stated four grounds for its position, but did not elaborate upon any of them nor did anyone offer testimony in support thereof, though the record indicates that the Director of Planning attended the hearing. (He later became the witness whose testimony was submitted, but was subsequently held inadmissible, in the Circuit Court.) Judge Anderson found two of

the Commission's grounds unsupported by any evidence, but found two others to be supported to some extent by evidence before the Mayor and Council. One of these related to change or lack thereof in the neighborhood, the other to the adequacy or inadequacy of access to the tract.

No claim or contention is or was made by the appellants that there was error in the original zoning of the tract. They do, however, contend that there was evidence of such change in the neighborhood, including two "radical" departures from the 1960 Master Plan, as to warrant the zoning requested and to make it arbitrary, discriminatory and unlawful for the City to refuse to grant it. They rely heavily on the *Oak Hill Farms* case, as they did in the Circuit Court. We agree with Judge Anderson's view that there are facts in this record which distinguish the present case from *Oak Hill Farms.*

Whether or not the extensive industrial rezoning to the north of the subject property and the rezoning of a much smaller area, also to the north, for apartment use would have shown sufficient change in the neighborhood to sustain rezoning is not the question before us. Our question is whether there was evidence upon which the Mayor and Council could properly reject it. We agree with Judge Anderson that the evidence does not indicate such a change in the area as "would render the Master Plan useless," nor do we think that it showed such a change as would take the question of rezoning out of the realm of the "fairly debatable."

Important highways may serve to divide areas from each other for zoning purposes. *Hewitt v. Baltimore County,* 220 Md. 48, 60, 151 A. 2d 144; *Shadynook Imp. Assn. v. Molloy,* 232 Md. 265, 272, 192 A. 2d 502. None of the changes in zoning shown by the evidence occurred in the great "southwest quadrant"—virtually a semicircle—of the intersection of Routes 28 and 70-S; each of them covered an area across one or both of these highways, and the focal point of the principal changes was 1.8 miles away. The property here in question is literally surrounded on all sides (except for Route 70-S, and even across that highway) by land which is zoned R-S or R-90. We agree with Judge Anderson that the "Mayor and Council could reasonably find that the neighborhood within which the subject

property is located has not changed, for the subject property is isolated from the R-30 and I-3 zoning by major roads and other residentially zoned property." This view is reinforced by the fact that all the rest of the neighboring quadrant or semicircle in which the subject property is situated continues to be zoned for single family residences and by the further fact that the Mayor and Council acted to preserve this situation even at a substantial distance to the south by refusing to adopt the rezoning recommended by the Planning Commission for land at Great Falls and Seven Locks Roads.

We also agree with Judge Anderson's view that although the applicants offered expert opinion evidence that access to the subject property, if used as planned, would be adequate, the Mayor and Council could have reached an opposite conclusion from the expert's report and from the layout of the roads. The report conceded that there were areas of conflict created by left turns to and from the ramp system, and a study of the maps showing that system confirms it and indicates that the problem would be substantial. The only proposed ingress to and egress from the subject property, with its 610 residence units, would be via a single road entering Veirs Lane. This junction point is practically at the junction of Veirs Lane and the southbound access road or ramp leading to Route 70-S. It is also only a little way south of the intersection of Veirs Lane and Route 28. There would be apparently no difficulty about getting into Route 70-S to go south into Washington or in getting onto Route 28 to go east into Rockville, but to get onto Route 70-S northbound to go north would require a left turn off Route 28, and to get back to the subject property if one came out Route 70-S from Washington, or to get back to it from Rockville would require a left turn off Route 28. Some of these difficulties are due to the fact that the interchange between Routes 28 and 70-S are of the so called "trumpet" type and not of the full "cloverleaf" pattern. To enter or leave the "trumpet" type left turns as well as right must be permitted and in many instances must be employed. The disadvantage to traffic is obvious. The "cloverleaf" pattern employs only right turns. The evidence shows that rights of way have been acquired for a full "cloverleaf" interchange between Routes 28 and 70-S, but

168

there is nothing to show that its construction is in prospect in the reasonably near future (or indeed at any particular time). Cf. *Rohde v. County Board,* 234 Md. 259, 199 A. 2d 216, where construction of a new road was reasonably in prospect of fruition in the foreseeable future, and *Bonhage v. Cruse,* 233 Md. 10, 194 A. 2d 803, where the widening of a sidestreet was not. No weight could be given here to the vague prospect of future construction of the "cloverleaf."

As we have noted, there is no claim of error in original zoning. We conclude that because of the absence of evidence of change in the neighborhood which would virtually require the rezoning sought and in view of the serious traffic problems which the rezoning would be likely to create, we cannot hold that the Mayor and Council, in denying the application, acted in an arbitrary, illegal or discriminatory manner. *Ertter v. Montgomery County, supra; Levy v. Seven Slade, Inc.,* 234 Md. 145, 198 A. 2d 267 (both bearing on the absence of change) ; *Hardesty v. Board of Zoning Appeals,* 211 Md. 172, 126 A. 2d 621 (bearing on traffic problems) ; and as to the latter, cf. *Hewitt v. Baltimore County, supra,* 220 Md. at 61-62. We accordingly affirm the decree of the Circuit Court.

> *Decree affirmed; the appellants to pay the costs.*