## JOHN HOFMEISTER et al. v. THE FRANK REALTY COMPANY

[No. 152, September Term, 1976.]

*Decided May 11, 1977.*

The cause was argued before GILBERT, C. J., and MOYLAN and LOWE, JJ.

*William F. C. Marlow, Jr.,* with whom was *F. Vernon Boozer* on the brief, for appellants.

*E. Stephen Derby,* with whom were *Piper & Marbury* and *Nolan, Plumhoff & Williams* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

If the imprecise use of language plagues the law generally, it falls upon the head of the zoning law with peculiar vengeance. The root problem giving rise to the present appeal was the failure of the lawmaking authorities of Baltimore County to distinguish cleanly between the Genus "Special Exceptions" and the Species "Special Exceptions." The phrase was used in one critical context, at least, with a broad, generic meaning; the same phrase was used on other occasions with a more limited and specific meaning; the lawmaking authority never pinpointed which meaning it had in mind on a particular occasion nor did it even seem aware of the potential semantic problem lurking within its linguistic imprecision.

Although the problem before us for resolution is exclusively one of law, the factual background must be set. The appellee, Frank Realty Company (Frank), owns Overlea

Hall, which is a catering establishment in Baltimore County. It is located on Belair Road, a major thoroughfare in a business district. Overlea Hall does not have its own parking lot, but it is situated next to a Union Trust Bank, which does. The customers of Overlea Hall park either on the bank lot or on the surrounding streets. In 1970, 1972 and 1973, Frank acquired three properties, adjacent to and in the rear of Overlea Hall, forming one integrated tract and having frontage on two side streets. On the tract, Frank desired to build a parking lot for 84 vehicles.

Pursuant to the Baltimore County Zoning Regulations (1975 Ed.) (BCZR), Overlea Hall was zoned Business Local (BL) in a Commercial Community Core (CCC) District. Catering is a use permitted in such a zone. The land on which the parking lot was to be built, however, was zoned Residential.[1] Off-street parking is not a use permitted as of right in a residential zone, but is a permitted use if a Special Use Permit is applied for and issued pursuant to § 409.4 of the BCZR.

Over the protestations of the appellants, who are residents of the affected area, the Baltimore County Zoning Commissioner on June 4, 1974, granted Frank a Special Use Permit for off-street parking in a residential zone.[2] Appellants, joined by the Baltimore County Deputy People's Counsel,[3] appealed to the County Board of Appeals, who, on

---

1. The more exact residential zoning classification does not appear in the record.

2. The permit was issued subject to the following conditions:

    1. Compact screening, a minimum of six (6) feet in height, be constructed around the entire subject property, excluding entrances and exits, and that portion of the subject property which is immediately adjacent to the Overlea Hall catering establishment.

    2. Any lighting that is constructed on the subject property is to be a maximum of six (6) feet in height.

    3. Only ingress be afforded from the entrance on Overlea Avenue.

3. The People's Counsel is appointed by the Baltimore County Executive and is charged with representing the public interest before the Zoning Commissioner, the County Board of Appeals, or the courts in any matter involving the Baltimore County Zoning Regulations. Baltimore County Charter § 524.1(b); Baltimore County Code (1968 ed., 1974-75 Cum.Supp.).

July 29, 1975, upheld the grant.[4] The County Board of Appeals found that the requirements of § 409.4 and of § 502.1[5] of the BCZR had been satisfied and held that the Zoning Commissioner had the power to issue Special Use Permits. From that ruling, an appeal was taken to the Baltimore County Circuit Court. In that court, Judge John Grason Turnbull upheld the decision of the County Board of Appeals. That decision of Judge Turnbull has now been appealed to us.[6]

The appellants do not contend that the action of the County Board of Appeals was "arbitrary and capricious" or lacked factual support. The sufficiency of the evidence on the merits of whether Frank had satisfied the pertinent requirements was not seriously disputed. The key issue presented by the appellants is that of whether the Zoning Commissioner and the County Board of Appeals possessed the delegated authority to grant such Use Permits at all. In question is the general authority and not the merits of this individual exercise of authority.

Before addressing its merits, we will state the argument as posed by the appellants. They contend that a "Special Permit" (or Use Permit) and a "Special Exception" are distinct legal phenomena. In this regard, they find arguable support in the words of the Court of Appeals in *Marek v. Board of Appeals*, 218 Md. 351, 357, 146 A. 2d 875, to the effect that a request for an off-street parking permit "is not a request for a Special Exception." They further contend that prior to 1960, the Baltimore County Commissioners and their successors, the Baltimore County Council, explicitly delegated to the Zoning Commissioner of Baltimore County the power to issue both "Special Permits" and "Special Exceptions." The final premise in the argument is that a major change was made in this grant of authority by Bill

---

4. An appeal to the County Board of Appeals is authorized in Md. Anno. Code, Art. 25A § 5(u) (1975 Cum.Supp.) and § 501.2 of the BCZR.

5. To be more fully discussed hereinafter.

6. Appeals to the Circuit Court and then to the Court of Special Appeals are authorized by Md. Anno. Code, Art. 25A § 5 (u) and § 501.4 of the BCZR. See *Levy v. Seven Slade, Inc.*, 234 Md. 145, 149, 198 A. 2d 267, 269 (1964).

No. 80, enacted by the County Council in 1960. That bill explicitly repealed § 34-11 of the Baltimore County Code (1958 Ed.) which had delegated certain powers (including the power to issue Special Permits) to the Zoning Commissioner, and replaced it with § 22-23 which provided in pertinent part:

> "Authority of zoning commissioner to provide for special exceptions and variances.
>
> Subject to the appropriate principles, standards, rules, conditions and safeguards as set forth in the zoning regulations, the zoning commissioner may ... make special exceptions to the zoning regulations in harmony with their general purpose and intent ..."

The appellants argue strenuously that "No mention was made of any other authority being vested in the Zoning Commissioner ..." and "More important is the fact that the term and authority to issue a 'special permit' was deleted altogether." It is their position that in the repealing and reenacting of the grant of authority to the Zoning Commissioner that occurred in 1960, the Zoning Commissioner was stripped of all power to issue Special Use Permits.

The problem is clear-cut. The grant of authority, by its terms, authorizes "Special Exceptions" but not "Use Permits." Thus, if a "Use Permit" is a variety of "Special Exception" within the contemplation of § 22-23, then the authority to issue such a "Use Permit" has been delegated to the Zoning Commissioner and the present decision will be affirmed. If, on the other hand, a "Use Permit" does not fit under the umbrella of "Special Exception," the authority to issue such "Use Permit" has not been delegated to the Zoning Commissioner and the decision must be reversed. The appellee urges that a "Use Permit" is a "Special Exception"; the appellants urge that it is not.

We conclude that the question is not so simple and clear-cut. A "Use Permit" *both is and is not* a "Special

Exception," depending upon which meaning of "Special Exception" the legislative authors of the phrase had in mind upon the particular occasion when they used it. A "Use Permit" is within the generic meaning of "Special Exception"; it may not be within the specific meaning of "Special Exception." The question, therefore, becomes that of whether the Baltimore County Council, when it delegated to the Zoning Commissioner the power to make "Special Exceptions," intended to use the phrase in its broad and generic sense or in its narrower and more specific sense.

Having stated the issue, we seek the path to its resolution through the legislative and linguistic tangle of the Baltimore County zoning experience. We begin with a broad principle of zoning law not parochial to Baltimore County but universal to the zoning cosmos. Within each zone created, there are primary and designated uses available as a matter of right with no permission needing to be sought from any zoning authority. There are other uses proscribed by law and, therefore, beyond the pale, absent a zoning reclassification. Between the two poles is a borderland wherein certain uses are not prohibited by law but neither are they absolutely permitted as a matter of unconditioned right. Generally speaking, they are privileges which must be sought from and authorized by some administrative agency (a zoning commissioner, a zoning board, etc.), which possesses the authority to condition the grant of permission, influenced by a number of relevant social considerations. The uses of the property in issue are permitted uses, generally compatible with the zone but not at every or any location therein or without certain restrictions or conditions being imposed. This determination of compatibility and this imposing of conditions is vested in an appropriate administrative authority. In describing this broad phenomenon, the vocabulary has been far from uniform but the law has recognized that the same principle is afoot even when the labels may vary.

82 Am.Jur.2d, *Zoning and Planning*, XIII. C. "Special Permits or Exceptions," § 281 "Generally; terminology,"

speaks of both the general phenomenon and its fluctuating vocabulary at 827-828:

> ". . . A 'special permit' or 'special exception' designates a species of administrative permission which allows a property owner to put his property to a use which the regulations expressly permit under conditions specified in the zoning regulations themselves. Some zoning laws or ordinances use the term 'conditional use permit,' 'special exception permit,' or 'special use permit' to refer to this type of administrative permission. In one jurisdiction, the term 'waiver use approval' has been used. But regardless of which of the foregoing terms is used, the nature of the administrative permission and of the use permitted is, viewed broadly and substantively, the same, since each involves a use which is permitted rather than proscribed by the zoning regulations. In the words of the Supreme Court of Connecticut, 'the terms "special exception" and "special permit" hold the same legal impact and can be used interchangeably.' . . .
>
> The function of a special permit is to bring some flexibility to the rigid restrictions of a zoning ordinance while at the same time controlling troublesome or somewhat incompatible uses by establishing, in advance, standards which admit the use only under certain conditions or circumstances."

3 Anderson, *American Law of Zoning*, § 15.01, speaks to the same effect, at 84:

> "The 'special exception,' the 'special permit,' and the use permitted subject to administrative approval, are qualitatively the same. Each involves a use which is permitted rather than proscribed by the zoning regulations. Each is allowed only upon approval of a board of adjustment or other administrative body. . . . And in each case, the

board is guided and its power limited by hearing requirements and standards."

2 Rathkopf, *The Law of Zoning and Planning*, Ch. 54, § 1, n. 1, uses both the terms "special exception use" and "special exception permit" but claims that both are misnomers. He suggests that a more accurate description would be "conditional use permit" because ". . . no 'exception' is made to the provisions of the ordinance in permitting such use; the permit granted is for a use specifically provided for in the ordinance in the case in which conditions, legislatively prescribed, are also found."

Although frustratingly the vocabulary varies from county to county and although the ultimate arbiter of intended meaning is the local legislative user of the contested words, the Court of Appeals in *Rockville Fuel & Feed Co. v. Board of Appeals*, 257 Md. 183, 187-188, 262 A. 2d 499, recognized generally that "conditional use" and "special exception" are synonymous terms. In a 1954 decision arising out of Baltimore County, *Oursler v. Board of Zoning Appeals of Baltimore County*, 204 Md. 397, 104 A. 2d 568, the Court of Appeals did use the terms "permit" and "exception" interchangeably. Although, to be sure, dealing with zoning regulations and, therefore, with vocabulary emanating from Prince George's County rather than from Baltimore County, the Court of Appeals in *Cadem v. Nanna*, 243 Md. 536, 543, 221 A. 2d 703, defined the phrase "Special Exception" in terms of the broad and general phenomenon herein being discussed:

"The words 'special exception' are well known in zoning law. They refer to a grant by the zoning administrative body pursuant to the existing provisions of the zoning law and subject to certain guides and standards, of a special use permitted under the provisions of the existing zoning law."

See also *Montgomery County v. Merlands Club, Inc.*, 202 Md. 279, 287, 96 A. 2d 261. *Cadem v. Nanna* cited as authority the

New Jersey decision of *Tullo v. Township of Millburn,* 54 N.J. Super. 483, 149 A. 2d 620, 624-625, which explained:

> "The term ['special exception'] might well be said to be a misnomer. 'Special uses' or 'special use permits' would be more accurate. The theory is that certain uses, considered by the local legislative body to be essential or desirable for the welfare of the community and its citizenry or substantial segments of it, are entirely appropriate and not essentially incompatible with the basic uses in any zone. . ., but not at every or any location therein or without restrictions or conditions being imposed . . . . If the board finds compliance with the standard or requisites set forth in the ordinance, the right to the exception exists, subject to such specific safeguarding conditions as the agency may impose . . . ."

Thus, the broad phenomenon does have, here as elsewhere, many labels. Whether the label employed on a particular occasion happens to be "special permit," "conditional use," "special use," "use permit," or "special exception," the type of relief described is the same. This broad phenomenon is what we shall refer to as the genus. Generally speaking, the name "Special Exceptions" refers to this genus.

What remains to be seen is how the name "Special Exceptions" came to take on a more limited and specific meaning in the zoning experience of Baltimore County. As we shall see, however, that additional and narrower meaning was not in lieu of, but rather in addition to, the broader and more general meaning, which continued to enjoy a separate vitality of its own.

The process of evolution or differentiation, linguistically as well as biologically, is easy to understand. The genus initially was a simple and undifferentiated life form (or zoning phenomenon). Over the years, however, certain specific instances of the more general phenomenon were recognized as having some unique identifying char-

acteristics, some unique problems, and some unique guidelines of their own. As these ascertainable instances of the more general phenomenon were singled out for separate handling, they came to be identified as distinct species within the broader genus. This was particularly true of that instance of "Special Exceptions" which came to be known as the "Use Permit" for off-street parking in a residential zone.

Zoning regulations were first adopted by the County Commissioners of Baltimore County on January 2, 1945, pursuant to a special enabling act, aopted by the Maryland Legislature in the Acts of 1941, Ch. 247. The County Commissioners were authorized to appoint a Zoning Commissioner and a Board of Zoning Appeals to hear and determine issues raised pursuant to the regulations. Among his other powers, the Zoning Commissioner was empowered to make Special Exceptions and to issue Special Permits within appropriate guidelines. The Code of Public Local Laws of Baltimore County (1948), Title 23, § 367 established § XIII of the Zoning Regulations, entitled "Powers Relative to Special Exceptions and Special Permits."

That § XIII of the Zoning Regulations and Restrictions for Baltimore County (Doing Ed., 1948), indicated the still-loose interchangeability of the terms "special exception" and "special permit," on the one hand, but also began the process of differentiation between them, on the other hand. Although the term "special exception" is contained in the title, the text of the section nowhere employs it but uses only the term "special permit." Indeed, § XIII's preamble provides that ". . . such uses may be permitted only upon a special permit granted by the zoning commissioner, subject to appeal . . ." It appears that the Special Permit authorized the Special Use, the total effect of which could be described as a Special Exception. In terms of the beginning of differentiation, subsection A treats generally the special permits that shall be required for a list of designated uses in a residential zone. It does not include off-street parking. It is rather in a separate section, subsection C, that off-street parking receives its separate treatment: "In any residential

zone a special permit shall be required for use of land for automobile parking, subject to the following regulations."

The process of differentiation went further in 1955 when the Baltimore County Commissioners excised from the old § XIII the provisions dealing with off-street parking in a residential zone and housed them in § 409.4 of the Baltimore County Zoning Regulations. Several other conditional uses or "Special Exceptions," which also had taken on distinct identities and involved distinct guidelines and regulations, were also lodged in Art. 4 of the BCZR which was entitled "Special Regulations." The remainder of the "Special Exceptions," which were not singled out for special handling, were treated in § 502, called "Special Exceptions." (It would have been preferable, of course, if § 502 had been entitled *"Other* Special Exceptions.")[7] The differentiation proceeded further when § 500, listing the powers of the Zoning Commissioner, listed his power to issue a use permit (such as for off-street parking) in subsection 500.4, but then listed his power to deal with "Special Exceptions" under § 502 in a separate subsection, 500.2. We may thus perceive, as other conditional uses begin to take on separate identities and branch off from the main stem, the emergence of a distinct species "Special Exceptions," including in its ranks the remainder of the conditional uses which have not taken on distinct identities. The species "Special Exceptions" is now a part of the genus "Special Exceptions." Therein is the heart of the problem. The same name now refers 1) to the whole and 2) to a part of the whole.

Notwithstanding this differentiation between the species, we think it preeminently clear that the singling out of certain conditional uses for special treatment in Art. 4 of the BCZR did not in any fashion denigrate from their credentials as members in continued good standing of the genus "Special Exceptions." Art. 4, in its Statement of

---

7. We do not agree that § 502 need be complied with in order to obtain a use permit for off-street parking which is governed exclusively by § 409.4.

Purpose, makes the reason for the distinct treatment quite clear:

> "Certain uses, whether permitted as of right *or by special exception,* have singular, individual characteristics which make it necessary, in the public interest, to specify regulations in greater detail than would be feasible in the individual use regulations for each or any of the zones or districts. This article, therefore, provides such regulations." (Emphasis supplied)

Indeed, various of the special conditional uses singled out for individual treatment in Art. 4 explicitly retain their membership in the genus "Special Exceptions." A mere representative list includes § 402.3 (The conversion of a residence "for tearoom or restaurant use" is "a Special Exception."); § 402B ("An antique shop may be permitted as a Special Exception."); § 402C ("A residential art salon may be permitted as a Special Exception."); § 405.2 ("Locations in which automotive-service stations are permitted as of right and by special exception.").

Baltimore County adopted a charter form of government as of December 6, 1956. The Baltimore County Code, 1958 Ed., granted power to the Zoning Commissioner by § 34-11. It referred explicitly to both "special exceptions" and "special permits." It explicitly confirmed the authority of the Zoning Commissioner to continue to do those things which had been "required by § XIII of the Zoning Regulations of Baltimore County, as adopted January 2, 1945, and as amended November 15, 1946."

The distinction between the Use Permit for off-street parking in a residential zone under § 409.4, on the one hand, and the "special exception," on the other hand — the distinction on which the appellants largely build their present argument — was first made by the Court of Appeals in *Marek v. Baltimore County Board of Appeals,* 218 Md. 351, 146 A. 2d 875, in 1958. There, a requested permit for off-street parking was initially denied for what turned out to be an erroneous reason. The request was promptly

resubmitted and was granted by the Board of Zoning Appeals and the grant was affirmed by the Circuit Court for Baltimore County. The protestants there claimed that under the provisions of § 500.12 of the BCZR, a request for a Special Exception, once denied, could not be entertained again until the expiration of 18 months. In the course of holding that § 500.12 was not a bar to the granting of the Use Permit for off-street parking, the Court of Appeals found, of necessity, that such a Use Permit was not a "Special Exception." The Court reasoned, at 218 Md. 357:

> "This then brings us to the question as to *whether or not the petition* filed in this case *is a petition for a special exception* from the use that can be made of land lying in a zone classified as R.6 Residential. *We must conclude that this petition is not a request for a special exception.* It is quite true that the zoning ordinance does provide that under certain circumstances and for certain purposes which are enumerated at length a different use may be made of the land than that which the zoning ordinance contemplates. Section 270 sets out this Schedule of Special Exceptions in detail and Sections 502 and 502.1 set forth the principles and conditions which shall govern the Zoning Commissioner and the Board.
>
> *Off-street parking is not mentioned among the many things which may be the subject of a special exception* and the power to determine what situations shall be considered in that category is a legislative function, resting in this instance with the County Council of Baltimore County, and is not an administrative function of the Zoning Commissioner. The function of the Zoning Commissioner is limited to a determination under the existing factual situation if a special exception, one among those listed in the ordinance, is appropriate in any particular case." (Emphasis supplied)

There was now established, at least in terms of surface appearance, a seemingly unbridgeable dichotomy between a "Special Use Permit" for off-street parking in a residential zone under § 409.4 of the BCZR and a "Special Exception" under §§ 500.12 and 502 of the BCZR. This was to become the appellants' minor premise: A "Use Permit" is not a "Special Exception." The major premise was established two years later with the passage by the Baltimore County Council of Bill No. 80, limiting for presently pertinent purposes the power of the Zoning Commissioner to the granting of "Special Exceptions." The predicate was now laid for the appellants' present syllogism, which is:

| | |
|---|---|
| The delegated authority is to grant all "Special Exceptions." (Sect. 22-23 BCZR) | A is all B. |
| To grant a "Use Permit" is not to grant a "Special Exception." (*Marek*) | C is not B. |
| Therefore, to grant a "Use Permit" is not the delegated authority. | ∴ C is not A. |

The validity of the syllogism appears irrefutable. Nonetheless, we reject it as invalid. In terms of formal logic, it fails because there is no universal middle term (although there appears to be). The reason is that, although the words are the same, the term "Special Exception" does not mean the same thing in the major premise that it means in the minor premise. The term "B" has shifted its meaning in the course of the syllogism.

It is clear to us that the Court of Appeals in *Marek* was distinguishing the Species "Special Use Permit for Off-Street Parking" (governed by the rules of § 409.4) from the Species "Special Exceptions" (meaning the remainder of the special exceptions which are controlled by the rules of §§ 502 and 500.12, establishing the 18-month limitation for repetitioning purposes). The court was by no means indicating that the Species "Special Use Permit for

Off-Street Parking" was no longer a part of the Genus "Special Exceptions" (encompassing all conditional uses no matter what their labels, what their separate identities and what their special regulatory provisions might be). Indeed, no such problem was before it and it had no occasion even to consider the question. The distinction was only between two species within the same genus and not between a species and its parent genus. Indeed, we think the Court of Appeals was still giving the term its specific meaning when in *Jacobs v. County Board of Appeals for Baltimore County*, 234 Md. 242, 198 A. 2d 900, it said in 1964, at 234 Md. 248:

> "[W]e held in *Marek, supra*, that the Use Permits granted under Section 409.4 did not constitute 'special exceptions'. . ."

Quite clearly, the Court of Appeals did not mean to exempt the granting of Use Permits for off-street parking from the delegated powers of the Zoning Commissioner and County Board of Appeals, for in the *Jacobs* case itself, the Court affirmed the actions of the Zoning Commissioner and the County Board of Appeals in granting just such a Use Permit for off-street parking. That was four years after the Baltimore County Council had rearticulated the delegation of power, granting only, for presently pertinent purposes, the power to make "Special Exceptions." In *Bloede v. MacNabb*, 231 Md. 452, 190 A. 2d 780, the Court of Appeals had also dealt with the granting of a "Use Permit" for off-street parking in a residential area by the Baltimore County Board of Appeals. It there said explicitly, at 231 Md. 454:

> "Section 409.4 a of the Baltimore County zoning regulations authorizes the zoning commissioner to issue a permit for the use of land in a residential zone for a parking area. . . ."

Because as used in §§ 502 and 500.12 and by the Court of Appeals in *Marek* and *Jacobs*, the term "Special Exceptions"

is given only its narrower and more specific meaning, the premises for the appellants' syllogism become:

A is all B.

C is not some-B.

From those premises, it cannot be established validly whether "C" (the granting of a "Use Permit" for off-street parking) is or is not "A" (within the power designated to the Zoning Commissioner).

To have established this much is to refute the logic of the appellants, but not yet to establish the counter-logic of the appellee.

For that purpose, we must look to the meaning of the term "B" as employed in the major premise, which is to say we must look to the meaning of the phrase "Special Exceptions" as used by the Baltimore County Council in repealing and reenacting the grant of authority to the Zoning Commissioner and the County Board of Appeals in 1960.

It is clear to us that County Council Bill No. 80 of 1960 was intended not to rewrite the substance of the Baltimore County zoning law but only to consolidate, reorganize and edit the planning and zoning provisions that as of that time, after some 15 years of growth, were scattered throughout the Baltimore County Code. Indeed, § 4 of Bill No. 80 itself provided that its short title would be "The 1960 Planning and Zoning *Reorganization* Bill." (Emphasis supplied) Every indication is that the County Council fully intended the Zoning Commissioner and the County Board of Appeals to continue to enjoy and to exercise the same authority that had theretofore been theirs under the predecessor grant of authority. Bill No. 80 created Title 23 of the Baltimore County Code entitled "Planning, Zoning and Subdivision Control" and specifically provided in § 23-25 thereof:

"The zoning regulations adopted by Baltimore County on March 30, 1955, as amended on the effective date of this Act, are hereby declared to be in full force and effect provided, however, that in

the case of any conflict between such regulations
and the provisions of this Act, these provisions
shall control."

Above and beyond the short title, the title of Bill No. 80
confirms the intent of the County Council "to reorganize and
consolidate the functions of planning, zoning and
subdivision control in Baltimore County and to define the
duties, powers, responsibilities, qualifications and manner
of appointment . . ." of various zoning officials including the
Zoning Commissioner. There is no indication in the title or
the preamble that the Council sought to repeal any of the
authority of the Zoning Commissioner to grant Use Permits
for off-street parking. It is well established that legislative
intent may be discerned by examining a statute's title or
preamble as well as its terms. *Board of County
Commissioners v. Colgan*, 274 Md. 193, 200-201, 334 A. 2d 89;
*Mass Transit Adm. v. Balto. Co. Rev. Authority*, 267 Md.
687, 695-696, 298 A. 2d 413; *Shipley v. State*, 201 Md. 96, 103,
93 A. 2d 67.

It is asserted by the appellee and conceded by the
appellants that the settled usage in Baltimore County, even
post-1960, is for the Zoning Commissioner to grant "Use
Permits" for off-street parking in residential zones (or, as
the case may be, to refuse the grant but in any event, to
consider the question). Both *Jacobs v. County Board of
Appeals, supra,* and *Bloede v. MacNabb, supra,* are evidence
of this practice. Administrative interpretations contem-
poraneous with the passage of a statute have been con-
sidered strong evidence on the question of its best con-
struction. *Smith v. Higinbothom,* 187 Md. 115, 48 A. 2d
754. We think it preeminently clear that the Baltimore
County Council did not intend to erode the power of the
Zoning Commissioner to continue to do those things which
he had been doing since the advent of zoning regulations in
that county. "When a word in a statute is not clear, the
courts will seek the legislative intent in the language of the
statute by considering the object to be accomplished and
adopt the meaning which will harmonize therewith in
carrying out the purpose of the statute." *Walker v.*

*Montgomery County Council*, 244 Md. 98, 102, 223 A. 2d 181; *Height v. State*, 225 Md. 251, 170 A. 2d 212; *Powell v. State*, 179 Md. 399, 401, 18 A. 2d 587.

We find further evidence of both the original legislative intent and the continued and settled usage in the county from the fact that, again post-1960, subsequent editions of the BCZR in 1963, in 1969 and in 1975 have continued to include § 409.4 which explicitly authorizes the Zoning Commissioner to grant "Use Permits" for off-street parking in residential zones. Pertinent here are the words of *Smith v. Higinbothóm, supra*, at 187 Md. 132-133:

> "... where the language of a statute is susceptible of two constructions, a long-continued and unvarying construction applied by administrative officials is strong persuasive influence in determining the judicial construction of the statute, and it should not be disregarded except for the strongest and most urgent reasons."

See also *Rogan v. B. & O. R.R. Co.*, 188 Md. 44, 53, 52 A. 2d 261; *American-Stewart Distillery v. Stewart Distilling Co.*, 168 Md. 212, 177 A. 2d 473.

We are persuaded overwhelmingly that in the enabling act of 1960, the Baltimore County Council intended to give the phrase "Special Exceptions" its broad and generic meaning. It used it broadly even as the Court of Appeals had defined it in *Heath v. Mayor and City Council*, 187 Md. 296, 303, 49 A. 2d 799, 803, as:

> "... a dispensation permissible where the Board of Zoning Appeals finds existing those facts and circumstances specified in the ordinance as sufficient to warrant a deviation from the general rule."

In just such a sense did Judge Davidson define the term for this Court in *Anderson v. Sawyer*, 23 Md. App. 612, 617, 329 A. 2d 716, 720:

> "The conditional use or special exception is a part of the comprehensive zoning plan sharing the

> presumption that, as such, it is in the interest of the general welfare, and therefore, valid. The *special exception is a valid zoning mechanism that delegates to an administrative board a limited authority to allow enumerated uses which the legislature has determined to be permissible absent any fact or circumstance negating the presumption.* The duties given the Board are to judge whether the neighboring properties in the general neighborhood would be adversely affected and whether the use in the particular case is in harmony with the general purpose and intent of the plan." (Emphasis supplied)

It is beyond cavil that the granting of a "Use Permit" for off-street parking in a residential zone under the provisions of § 409.4 falls within this broad definition of "Special Exception." The Species "Use Permit" is indisputably a member of the Genus "Special Exception." It is also indisputably clear that the Baltimore County Council in 1960 used the term "Special Exception" in its broad and generic sense. With this new minor premise, the ultimate syllogism becomes:

| The delegated authority is to grant all "Special Exceptions." (Sect. 22-23 BCZR) | A is all B. |
| To grant a "Use Permit" is to grant a "Special Exception." | C is some-B. |
| Therefore, to grant a "Use Permit" is the delegated authority. | ∴ C is A. |

Q. E. D.

This conclusion is irrefutably valid. The action of the Baltimore County Circuit Court affirming the decision of the

710

County Board of Appeals affirming the decision of the Zoning Commissioner will, therefore, be and is hereby affirmed.

*Judgment affirmed; costs to be paid by appellants.*