LUTHERVILLE COMMUNITY ASSN., INC., ET AL. *v.*
WINGARD, ET UX. AND COUNTY BOARD OF
APPEALS OF BALTIMORE COUNTY

[No. 296, September Term, 1964.]

164

*Decided June 2, 1965.*

The cause was argued before PRESCOTT, C. J., and HAM-
MOND, HORNEY, SYBERT and OPPENHEIMER, JJ.

*Gordon G. Power,* with whom were *Power & Mosner* on
the brief, for appellants.

*L. Robert Evans,* with whom was *John Warfield Armiger*
on the brief, for appellees.

HORNEY, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for
Baltimore County affirming the action of the County Board of
Appeals in reclassifying from R-10 (residence, one family) to
R-A (residence, apartment) all but a one hundred foot strip
of land along the northern property line on Lincoln Avenue of
a 3.97 acre tract of land in Lutherville. On cross-appeals to it
from the Zoning Commissioner, the Board granted the requested
reclassification after the withdrawal of a request for a special
exception to construct a high-rise apartment. The individual
appellant, Peter J. Karnoski, is one of a large group of protes-
tants who appeared individually and as members of the Luther-
ville Community Association, the corporate appellant.[1] The in-
dividual appellees, Robert A. Wingard and Elizabeth W. Win-

---

1. There is nothing in the record to show that the community as-
sociation had any standing to appeal and if there were not proper
individual appellants the appeal would be subject to dismissal.
Shadynook Imp. Assn. v. Molloy, 232 Md. 265.

gard, are the owners of the tract reclassified for garden apartment use.

Lying north of the Baltimore Beltway, the Wingard property is on the southern side of Lincoln Avenue, a twenty-four foot street of which nineteen feet is paved, and abuts (for about fifty feet) the western side of Charles Street Avenue extended (also known as Lutherville Road or Avenue), the paved portion of which terminates approximately seventy-five feet from the property in question. To the north (along Lincoln Avenue) and to the east and south on both sides of Charles Street Avenue extended, there are a number of one family dwellings. To the southwest, adjacent to the Bellona Avenue ramp leading to the Beltway, there is a 3.53 acre tract of land zoned B-R (business, roadside), which, although it is not contiguous to the subject property is, at one point, less than two hundred feet from it. Topographically, the Wingard tract rises from Lincoln Avenue to a crest and then falls sharply off to the south in the direction of Bellona Avenue and the Beltway.

When the comprehensive rezoning map was adopted in 1956, all of the properties (except existing non-conforming uses), surrounding the Wingard tract, as well as that tract, were zoned R-10. No R-A classifications were provided for, nor have any reclassifications for such use been granted in the vicinity of Lutherville north of the Beltway since the adoption of the present land use map. But in 1957, based on a mistake in the comprehensive rezoning, the land now zoned B-R was reclassified from R-10 to permit the erection thereon of commercial buildings for the use of the Sperry Rand Company and the Minnesota Mining and Manufacturing Company.

At the hearing before the Board, the protestants presented testimony to the effect that the land sought to be reclassified was topographically suitable for one family dwellings. But there was also testimony on behalf of the owners to the effect that the property was particularly suitable for apartments because of its accessibility to the Beltway and the extension of Charles Street Avenue. Other witnesses testified that the development of the tract as planned would constitute a buffer zone between the commercial property and non-conforming uses to the south and west and the R-10 land to the north and east.

There was also evidence tending to show that since there were no present plans for the future extension of Charles Street or Lutherville Avenue, ingress and egress to and from the Wingard tract would have to be by way of Lincoln Avenue and that the building of apartments on the property would necessarily increase the flow of traffic on that narrowly paved street. But there was other evidence to the effect that Charles Street or Lutherville Avenue would be extended in the near future, and that even if it were not, Lincoln Avenue was capable of accommodating the resulting increase of traffic, and that traveling thereon would not be hazardous.

With respect to the use of the Wingard tract, the Board, finding that the prior reclassification of the tract situated to the south and west constituted a major change in the immediate area which affected the character of a part (though not all) of the subject property and that the topographical features of the land made it feasible to permit development of garden apartments, ordered that the part oriented on the Beltway should be reclassified to R-A and that the part (the one hundred foot strip) fronting on Lincoln Avenue should remain classified as R-10.

With respect to the means of access to and from the property in question, the Board, although it was then unable to determine what effect the future extension of Charles Street or Lutherville Avenue (which it was believed would eventually take place) might have on the subject property, was evidently satisfied that a reclassification to R-A would not create a traffic problem in the area at this time.

On the appeal to the circuit court the decision of the Board was affirmed on the basis that the issue presented was fairly debatable and that the action of the Board was not arbitrary, capricious or illegal. On the appeal to us, since the appellees concede there had not been a mistake in the comprehensive rezoning of this property, the only question for us to decide is whether those seeking reclassification met the burden of showing that there had been a change in the character of the neighborhood. As to this, the contention of the appellants that the reclassification of a part of the Wingard property for apartment use, on the ground that there had been a change, was improper

in that it was erroneously predicated on the reclassification of the nearby tract for commercial use which was based on a mistake in the comprehensive rezoning, raises an interesting question.

Although there had been only one substantial change—*i.e.,* the correction of a mistake in the comprehensive rezoning— since the adoption of the present land use map, we think the prior reclassification of the nearby tract from a one family residential use to a commercial use, coupled with other facts, such as the topographical features of the land, the proximity of the tract to the intersection of important arterial highways, the suitability of the site for garden apartments and the practicality of the apartments as a buffer between the commercial and low density residential zones, was enough, under the authority of *Bishop v. Board of County Commissioners,* 230 Md. 494, 187 A. 2d 851 (1963), to warrant the granting of the reclassification of most of the subject property. In *Bishop,* where the situation was quite similar to the conditions and circumstances in the present case, it was held that it was proper for the zoning authority, in determining whether a reclassification from a single family use to a multiple family use should have been granted, to take into consideration its prior action in rezoning a nearby tract from residential to commercial as having constituted a change in the surrounding area. If this could not be done in a case such as this, the ignoring of physical changes which are visible to the owners of the reclassified land but cannot be seen by the protestants who reside to the north and east, would defeat the very purpose of the rule allowing a zoning board to grant a reclassification based on changes in the character of the neighborhood.

In *Levy v. Seven Slade,* 234 Md. 145, 198 A. 2d 267 (1964), where the reference was to an already reclassified tract and not the one as to which the rezoning was sought, we recognized the fact that apartment zoning may constitute a buffer between commercial and residential zones.

Where, as here, there was sufficient evidence of change in the character of the neighborhood to raise a debatable issue, we cannot say that the expertise of the zoning authority was

168

not properly applied in granting the reclassification. *DePaul v. Board of County Commissioners*, 237 Md. 221, 205 A. 2d 805 (1965). As we recently stated in *Dal Maso v. Board of County Commissioners*, 238 Md. 333, 209 A. 2d 62 (1965), "it is not the function of the courts to zone or rezone, or to substitute their judgments for that of the expertise of the zoning officials."

*Order affirmed; the appellants to pay the costs.*