BAKER, ET AL. *v.* MONTGOMERY COUNTY COUNCIL, ET AL.

[No. 131, September Term, 1965.]

*Decided January 14, 1966.*

The cause was argued before PRESCOTT, C. J., and HORNEY, MARBURY, BARNES and McWILLIAMS, JJ.

*Jerome E. Korpeck,* with whom were *Wheeler, Moore & Korpeck* on the brief, for appellants.

*Hal Lackey,* with whom were *Robert G. Tobin, Jr.,* and *Douglas H. Moore, Jr., County Attorney* and *Deputy County Attorney,* respectively, *for Montgomery County,* on the brief, for appellees.

HORNEY, J., delivered the opinion of the Court.

In this zoning case, the Montgomery County Council, acting in its capacity as a district council, granted an application for the reclassification of a 32.61-acre tract of land (designated as Layhill Park on the zoning identification plat) from an R-90 zone (one-family detached restricted residential) to an R-20 zone (multiple-family medium density residential). On the appeal of the protestants (Francis B. Baker and William B. Whitley) to the Circuit Court for Montgomery County, that court sustained the action of the district council. The order of the circuit court will be reversed for the reasons herein stated.

Several questions are raised on this appeal: (i) whether the protestants were "persons aggrieved" within the meaning of the county code so as to endow them with the standing necessary to maintain an appeal; (ii) whether the application for rezoning complied with the procedural requirements of the county code; and (iii) whether there was sufficient evidence before the district council when it decided to grant rezoning to make the question of change in character fairly debatable.

The property involved is an irregularly shaped tract of land owned by Randolph Hills, Inc. It is located west of Layhill Road, south of Briggs Road and Lutes Subdivision and east of the subdivision known as Foxhall where the protestants reside. At the time of the application for rezoning, the property abutted on Layhill Road, Jingle Lane, Briggs Road and Crestridge Lane, all of which were public roads. The property in

question and all the land contiguous to it had at one time been classified as R-90. The last comprehensive rezoning of the area in 1954 placed the subject property and the surrounding properties in an R-90 zone and the Upper Northwest Branch Watershed Master Plan adopted by the planning commission in April 1961 continued them in that category. However, this Court in *Marcus v. Montgomery County Council,* 235 Md. 535, 201 A. 2d 777, decided July 8, 1964, affirmed the action of the council in rezoning a 26.9-acre tract of land, abutting the subject property on the south, from R-90 to R-30 (multiple-family low density residential). As a result the property to the north, east and west of the property in question remained in the R-90 zone while a substantial portion of the property immediately to the south was zoned R-30. Further south a 3.6-acre tract was zoned C-O (commercial-office building) and beyond that there was a small area zoned C-1 (local commercial).

The application for rezoning in the instant case was filed on May 31, 1963. Subsequently the technical staff of the planning commission recommended denial of the proposed R-20 rezoning because, in its opinion, apartment development would be out of character with the existing uses in the area; because there had been no change in the character of development; and because the requested change did not conform to the adopted plan. The technical staff also pointed out that 8.5 acres of the 32.6-acre tract in question had already been dedicated to public use in the latter part of 1962 and could not now be considered for rezoning. The planning board itself also advised disapproval of the rezoning and voted unanimously to accept the recommendation of the technical staff as generally stating the opinion of the board with respect to the application.

The only person who "testified" in favor of the requested rezoning at the council hearing was the attorney for the applicant. He did not contend that there had been a mistake in the original zoning. Rather the position he took was generally to the effect that there had been a substantial change in the character of the area since the adoption of the last comprehensive zoning map. However, no expert witnesses were offered by the applicant in support of this position. Several protestants, including one of the appellants, testified in opposition to the rezoning application.

The council hearing was held on August 5, 1963, but it did not render its decision until August 4, 1964. On that date it passed a resolution granting the requested reclassification from R-90 to R-20. In so doing, the council relied on the previous action it had taken in granting the reclassification (from R-90 to R-30) of the 26.9-acre tract abutting the subject property on the south which had been approved by this Court in the *Marcus* case. In the opinion accompanying the "resolution to grant," the council stated that it was of "the opinion that the reclassification of the [26.9-acre] area * * *, together with other changes in the Glenmont area (as confirmed by the Court of Appeals in the *Marcus* case, * * *) constitutes sufficient change in the character of the neighborhood to justify the requested reclassification to R-20."

The appeal of the protestants to the circuit court was dismissed on the ground that neither appellant had standing to attack the validity of the decision of the council since neither had shown "that his property interests would be adversely affected by the granting of the rezoning." Although the appeal was dismissed for want of standing, the court, upon the request of the parties, agreed to pass on the merits of the appeal and did so. In its supplemental order and opinion affirming the action of the council, the lower court found that "the technical objections raised by the appellants have no merit as there was substantial compliance with the law by the appellees, and * * * the testimony contained in the record clearly indicates that the facts presented to substantiate the action of the district council were fairly debatable." We disagree with all of the holdings of the lower court.

(i)

It appears that the first question, whether the protestants had standing to appeal in the absence of a specific showing that they were persons aggrieved, not having been properly raised below, is not before us on appeal. It may well be, since the record indicates that the appellant Baker resided a short distance from the subject property and that the appellant Whitley owned property abutting on the subject property, that a question as to the right of the appellants to appeal to the courts could have been decided by the lower court had the question been season-

ably raised therein, but, as the record shows, the motion to dismiss was not actually filed until a month after the court hearing had been held. As to this, the appellees contend, on the one hand, that although no formal motion to dismiss was made prior to the hearing on March 2, 1965, they had made an oral motion at the hearing and that a written motion was subsequently filed on April 2, 1965, requesting that the appeal to the circuit court be dismissed for the reason that the appellants had failed to qualify as aggrieved persons under § 72-85 of the county code. On the other hand, the appellants, although admitting that counsel for the county council had stated at the court hearing that he believed Baker was not an aggrieved person, not only assert that the status of Whitley was not even mentioned, but they claim that no oral motion to dismiss the appeal was made during the court hearing. While the lower court indicated in its opinion that the appellees had orally moved to dismiss the appeal during the court hearing, it is not possible to determine with certainty whether or not such an oral motion was actually made because no transcript of the record is available, the court having suggested that the reporter need not be present. Under the circumstances, considering the fact that there is a dispute as to the making of an oral motion, that there is no docket entry indicating that an oral motion was made and that there is no other concrete evidence in the record to support the claim that an oral motion was made at the hearing, we find that the question of standing was not properly before the lower court.

(ii)

As to whether the application for rezoning complied with the procedural requirements of the county code, we agree with the contention of the appellants that the application was void in that it failed to comply with certain of the mandatory provisions of the zoning law (Chapter 104). Specifically, the appellants contend that the applicant violated § 104-37(a), entitled "Applications for amendment—Posting of property—Erection of sign," which provides:

"Within three days after acceptance for filing of an application for a local map amendment the applicant shall erect a sign, * * *, on the land proposed to be reclassified. Such sign shall be erected * * * within ten

feet of whatever boundary line of such lands abuts the most traveled public road, * * *. In addition to the aforementioned posting requirements, where a parcel of land proposed to be reclassified is five acres or more and abuts more than one road, then a sign shall be posted within ten feet of the boundary line of each public road which abuts the property." [1]

It is apparent from the record that the applicant posted only one sign, on Layhill Road, even though the property for which rezoning was sought exceeded five acres and abutted on several public roads. The appellees concede that only one sign was posted but claim that posting was not required at any other place and, even if it were, the notice given, including publication in a newspaper, was sufficient and substantial compliance with the notice requirements.

In its supplemental opinion, the lower court, in ruling on the merits of the appeal, found that there had been substantial compliance with the statutory requirements, despite the provisions of § 104-4 that "the word 'shall' is mandatory and not optional." Since more than substantial compliance with the zoning laws is required, it is apparent that the applicant violated an obligatory requirement by not erecting the requisite number of signs. Accordingly the lower court should have reversed the action of the district council in granting the reclassification. See *Cassidy v. County Board of Appeals,* 218 Md. 418, 146 A. 2d 896 (1958) ; *Crozier v. County Commissioners of Prince George's County,* 202 Md. 501, 97 A. 2d 296 (1953).

(iii)

The last and most important question presented by this appeal is whether there was sufficient evidence before the district council when it decided to grant the rezoning to make the dispute as to change in the character of the area fairly debatable. The lower court concluded that "the facts presented to substantiate the action of the district council were fairly debatable." But we think the evidence, such as it was, was clearly inadequate to raise a debatable issue.

---

1. This last sentence was added by Ordinance No. 4-164, adopted October 16, 1962.

Despite the requirements of § 104-40 of the county code that an "application for a map amendment shall be decided on the basis of the evidence of record," all that the attorney did, as the only "witness" for the applicant at the council hearing, was to remind the council that the 26.9-acre tract, abutting the subject property on the south, had recently been rezoned from R-90 to R-30; to state that he thought his client had been discriminated against in the use of its land; and to inform the council that the applicant had owned a tract of land consisting of approximately 65 acres, a portion of which was the subject of the rezoning application, and had sought to develop the whole tract under the existing R-90 classification, but had been prevented from doing so by the planning commission which had reserved the level portions of the tract aggregating about 32 acres for future public school sites. No other evidence was offered on behalf of the applicant. Based on what he had said, the attorney then argued that the reservation of school sites constituted a change in the character of this residential area and that the supposed change, considered with the recent rezoning of the abutting property to the south, constituted a proper basis for the reclassification of the subject property. As a part of the argument, it was further pointed out that the presence of certain previously proposed streets and cul-de-sacs, which could not be rezoned because they had already been dedicated, would so lessen the over-all density in the R-20 rezoning applied for as to make it comparable to the density in the abutting R-30 zoning.

As we see it, the evidence presented falls far short of showing such a change in the character of the area as is required to warrant reclassification. First of all, since schools are a permitted use in Montgomery County in an R-90 zone, the reservation of sites for future school construction does not constitute a change in the residential character of the area. *Levy v. Seven Slade, Inc.,* 234 Md. 145, 198 A. 2d 267 (1964) ; *Montgomery County v. Ertter,* 233 Md. 414, 197 A. 2d 135 (1964). And see *Kaslow v. Mayor & Council of Rockville,* 236 Md. 159, 202 A. 2d 638 (1964). Furthermore, the rezoning of abutting property does not always warrant the rezoning of adjacent property. Recently, in several cases, we have recognized the fact that apart-

ment zoning may constitute a buffer between commercial and residential zones. See *Lutherville Community Assn. v. Wingard,* 239 Md. 163, 210 A. 2d 534 (1965) ; *Levy v. Seven Slade, Inc., supra.* Although a buffer zone was not mentioned by this Court as a reason for affirming the action of the council in *Marcus v. Montgomery County Council, supra,* on which the council erroneously relied in the instant case to justify the rezoning of the subject property, the apartment zoning approved in that case was nevertheless a buffer between commercial and residential zones.[2]

While it has been uniformly held that the court, in reviewing the action of zoning authorities, will not substitute its judgment for that of the zoning officials, *Marcus v. Montgomery County Council, supra,* at p. 541 (of 235 Md.), *Pallace v. Inter City Land Co.,* 239 Md. 549, 212 A. 2d 262 (1965), a court will, where the record is so devoid of substantial supporting facts as to be incapable of raising a debatable issue, declare the legislative or administrative action invalid. *Levitt and Sons v. Board of County Commissioners,* 233 Md. 186, 195 A. 2d 723 (1963) ; *Jobar Corp. v. Rodgers Forge,* 236 Md. 106, 202 A. 2d 612 (1965).

In this case, where no effort was made to show that there had been a mistake in the original zoning and the evidence that was presented to show that there had been a change in conditions was insufficient to support a finding that there had been a substantial change in the character of the area, we think the action of the district council should have been reversed by the lower court, and we so hold.

> *Order of lower court affirming action of district council in granting rezoning is reversed; the appellees to pay the costs.*

---

2. In this connection, we note that the county council itself, in granting reclassification of the tract of land (of 26.9 acres) involved in Marcus v. Montgomery County Council, 235 Md. 535, stated that it was of the opinion that R-30 (granted in Marcus) was a proper use and provided "a nice transition between commercial and [the] R-90 zoning." The R-90 zoning referred to is the tract of land (of 32.61 acres) involved in the instant case. See Resolution No. 5-289 on Application No. C-965 for amendment to the Zoning Map of Montgomery County.