806 A.2d 348

**John A. HEARD, Jr., et al**

v.

**FOXSHIRE ASSOCIATES, LLC.**

No. 930, Sept. Term, 2001.

Court of Special Appeals of Maryland.

Sept. 3, 2002.

696

William C. Wantz, Hagerstown, for appellants.

Roger Schlossberg (Thomas M. Digirolamo and Schlossberg & Digirolamo on the brief), Hagerstown, for appellee.

Argued before HOLLANDER, SHARER and RAYMOND G. THIEME, JR. (Retired, Specially Assigned), JJ.

SHARER, Judge.

Appellants, John A. Heard, Jr. and David A. Leather, appeal from a decision of the Circuit Court for Washington County affirming a decision of the Washington County Board of Appeals (the "Board"), granting a special exception to appellee, Foxshire Associates, LLC. Foxshire applied for a special exception to extend the entrance to a retail shopping center owned by Foxshire through a subdivided residential lot, also owned by Foxshire, adjacent to the shopping center.

Appellants raise the following questions on appeal:

1. Did the Board err in granting a special exception, permitting the establishment of a commercial shopping center use in a residential zoning district?

2. Was the Board's grant of a special exception supported by substantial evidence in the record?

Because we conclude that the evidence before the Board was insufficient to support the granting of the special exception, we shall reverse and remand to the Board of Appeals.

## FACTUAL BACKGROUND

Foxshire is the owner of a tract of land abutting U.S. Route 40, east of the City of Hagerstown, in Washington County. Located on the land is a commercial property known as Foxshire Plaza Shopping Center (the "Plaza"), which is in a "BG" (Business, General) zoning district as defined by the Washington County zoning ordinance. Foxshire also owns an adjoining undeveloped lot (the "Lot"), which is zoned "RU" (Residential, Urban District). The use of that lot is the subject of this appeal.

The Plaza is located on the south side of U.S. Route 40. Principal access to the Plaza is from Route 40 eastbound, allowing uncomplicated entry from the west. Potential customers of the Plaza approaching from the east, however, must pass the Plaza, go to the traffic light at the next intersection, make a left u-turn onto eastbound Route 40, and return east to the Plaza entrance.

The Lot lies within the Rolling Green Acres Subdivision, which is adjacent to the Plaza property.[1] The Lot abuts Beverly Drive to the south, a local road that intersects with Route 40. A median crossover permits westbound Route 40 traffic to turn left onto Beverly Drive. Traffic from Beverly Drive, however, is not permitted to cross eastbound Route 40 to proceed west on Route 40.

---

1. Although not the subject of this appeal, appellants mention in a footnote in their brief that all of the lots in Rolling Hills, including the one owned by Foxshire, are subject to covenants which restrict the use of properties in the subdivision to single-family residential purposes.

Both appellants own, and reside in, single-family residences on Beverly Drive. The rear yards of both properties abut the Plaza parking lot.

On August 4, 2000, Foxshire sought approval of the Washington County Engineering Department to provide additional ingress to the Plaza by constructing a driveway through the lot owned by it in Rolling Green Acres. In response, Gary Hebb, the Engineering Department Plan Refiner, advised that, because of the RU zoning classification, a special exception would be required. On September 7, 2000, Foxshire submitted an application to the Board of Appeals for a zoning permit to authorize a "special exception to construct a commercial access road across the property which is zoned residential to the Foxshire Plaza Shopping Complex."

On September 27, 2000, the Board conducted a public hearing on the application and, thereafter, granted the special exception. Appellants appealed the Board's decision to the circuit court which, after hearing oral argument, affirmed in a written opinion and order of May 29, 2001. Appellants have noted a timely appeal. We will supply additional facts as necessary in our discussion of the issues presented for review.

## STANDARD OF REVIEW

In this review of an administrative ruling, we review the issues as did the circuit court; that is, was there substantial evidence in the record as a whole to support the Board's findings and conclusions. The Court of Appeals stated in *Board of Physician Quality Assurance v. Banks*, 354 Md. 59, 729 A.2d 376 (1999), the standard of review for appellate courts of administrative agencies:

A court's role in reviewing an administrative agency adjudicatory decision is narrow, *United Parcel v. People's Counsel*, 336 Md. 569, 576, 650 A.2d 226, 230 (1994); it "is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law." *United*

*Parcel,* 336 Md. at 577, 650 A.2d at 230. *See also* Code (1984, 1995 Repl.Vol.), § 10–222(h) of the State Government Article; *District Council v. Brandywine,* 350 Md. 339, 349, 711 A.2d 1346, 1350–51 (1998); *Catonsville Nursing v. Loveman,* 349 Md. 560, 568–569, 709 A.2d 749, 753 (1998).

In applying the substantial evidence test, a reviewing court decides " ' "whether a reasoning mind reasonably could have reached the factual conclusion the agency reached." ' " *Bulluck v. Pelham Wood Apts.,* 283 Md. 505, 512, 390 A.2d 1119, 1123 (1978). See *Anderson v. Dep't of Public Safety,* 330 Md. 187, 213, 623 A.2d 198, 210 (1993). A reviewing court should defer to the agency's fact-finding and drawing of inferences if they are supported by the record. *CBS v. Comptroller,* 319 Md. 687, 698, 575 A.2d 324, 329 (1990). A reviewing court " 'must review the agency's decision in the light most favorable to it; . . . the agency's decision is prima facie correct and presumed valid, and . . . it is the agency's province to resolve conflicting evidence' and to draw inferences from that evidence." *CBS v. Comptroller, supra,* 319 Md. at 698, 575 A.2d at 329, quoting *Ramsay, Scarlett & Co. v. Comptroller,* 302 Md. 825, 834–835, 490 A.2d 1296, 1301 (1985). *See Catonsville Nursing v. Loveman, supra,* 349 Md. at 569, 709 A.2d at 753 (final agency decisions "are *prima facie* correct and carry with them the presumption of validity").

Despite some unfortunate language that has crept into a few of our opinions, a "court's task on review is not to ' " 'substitute its judgment for the expertise of those persons who constitute the administrative agency,' " ' " *United Parcel v. People's Counsel, supra,* 336 Md. at 576–577, 650 A.2d at 230, quoting *Bulluck v. Pelham Wood Apts., supra,* 283 Md. at 513, 390 A.2d at 1124. Even with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency. Thus, an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts. *Lussier v. Md. Racing Commission,* 343 Md. 681, 696–697, 684 A.2d 804,

811–812 (1996), and cases there cited; *McCullough v. Witt-ner,* 314 Md. 602, 612, 552 A.2d 881, 886 (1989) ("The interpretation of a statute by those officials charged with administering the statute is ... entitled to weight"). Fur-thermore, the expertise of the agency in its own field should be respected. *Fogle v. H & G Restaurant,* 337 Md. 441, 455, 654 A.2d 449, 456 (1995); *Christ [ex rel. Christ] v. Department of Natural Resources,* 335 Md. 427, 445, 644 A.2d 34, 42 (1994) (legislative delegations of authority to administrative agencies will often include the authority to make "significant discretionary policy determinations"); *Bd. of Ed. For Dorchester Co. v. Hubbard,* 305 Md. 774, 792, 506 A.2d 625, 634 (1986) ("application of the State Board of Education's expertise would clearly be desirable before a court attempts to resolve the" legal issues).

*Board of Physician Quality Assurance, supra,* 354 Md. at 67–69, 729 A.2d 376 (footnotes omitted).

## DISCUSSION

Because we conclude that the lack of sufficient evidence is dispositive of this appeal, we shall discuss appellant's second issue at the outset.

Appellants contend that Foxshire failed to adduce substan-tial evidence before the Board to support the conclusion that the proposal met the prescribed standards and requirements for the grant of a special exception as set forth in *Schultz v. Pritts,* 291 Md. 1, 432 A.2d 1319 (1981) and, as a result of this failure, the Board erred in granting the special exception.

In *Schultz,* the Court of appeals held that

[t]he appropriate standard to be used in determining wheth-er a requested special exception use would have an adverse effect and, therefore, should be denied is whether there are facts and circumstances that show that the particular use proposed at the particular location proposed would have any adverse effects above and beyond those inherently associat-ed with such a special exception use irrespective of its location within the zone.

*Schultz, supra*, 291 Md. at 15, 432 A.2d 1319. With that standard as our guidepost, we must review the record made before the Board to determine the nature of the evidence and whether or not it satisfies the substantial evidence requirement.

The hearing of the Board of Appeals was called to order by Robert C. Veil, Jr., the chair. The record reveals that the chair called for "... all of those who will testify, [to] stand where you are, please, raise your right hand." The record notes that "(WHEREUPON, all potential witnesses were duly sworn.)" The following then ensued:

CHAIRMAN VEIL: Thank you. Be seated, please. Mr. Strasburg, any opening you'd like to make?

OPENING STATEMENT BY MR. STRASBURG.[2]

After having been recognized by the chair, Schlossberg proceeded to offer a substantial narrative of his client's proposed use of the RU lot for the construction of an alternative access to the Plaza.

At the conclusion of the Schlossberg narrative, Russell E. Townsley, a representative of Fox & Associates, an engineering and planning firm, was called as a witness for the applicant. His testimony consisted primarily of responses to questions from the Board chair and persons in the audience. The latter were, presumably, opponents of the application. Townsley's testimony was essentially limited to explanations of the intended use of the driveway and means by which its creation could be made more attractive and more palatable to nearby residential neighbors. He discussed, for example, that the driveway would be for ingress only, that trucks would be prohibited, and that adequate trees and other "buffers" would be installed. He did not discuss the engineering feasibility of the project; nor did he discuss, or refer to, traffic studies that might have been pertinent to a justification of the need for the special exception as an aid to highway safety or convenience.

---

**2.** "Mr. Strasburg" was, in fact, Roger Schlossberg, counsel for Foxshire. His name is misspelled throughout the transcript of the Board hearing.

No other evidence was offered by Foxshire. After hearing the testimony of appellants,[3] and from other protestants, the Board granted the application for special exception.

At this juncture it is important to consider the "evidence" presented by counsel for Foxshire. Was counsel's narrative actually evidence? Appellants contend that Schlossberg was not a sworn witness, but that his representation was made in response to Chairman Veil's invitation to present "an opening statement." They posit that Schlossberg was not a sworn witness; hence, his words were no more than argument and should not have been taken by the Board as evidence in support of Foxshire's burden of persuasion. Appellants raised that question before the circuit court where Schlossberg asserted that he had, in fact, been offered as a sworn witness before the Board. Appellants, in their brief, make the point that the Board relied upon "... the representations of counsel, as though they were evidence, in opening statement...." Appellee does not respond, in its brief, to the question of whether Schlossberg was, in fact, a sworn witness.

### Counsel as Witness

Within the issues presented in this appeal there arises a sub-issue of the competency of an attorney for a party to give evidence before an administrative agency. Our research has led us to several cases in which counsel for a zoning applicant have given what was referred to as "evidence" or "testimony."

In *Baker v. Montgomery County*, 241 Md. 178, 215 A.2d 831 (1966), the Court of Appeals reversed the Circuit Court for Montgomery County, which had affirmed the granting of an application for reclassification. The Court's reversal was founded upon insufficiency of the evidence. After noting that "[t]he only person who 'testified' in favor of the requested rezoning at the council hearing was the attorney for the applicant" and that the record did not support the granting of the re-classification, the Court reversed.

---

3. Appellants were not represented by counsel before the Board.

Later, in *Cason v. Board of County Comm'rs*, 261 Md. 699, 276 A.2d 661 (1971), wherein counsel for the applicant apparently gave evidence to the agency, as a witness, the Court of Appeals, responding to a contention that "... evidence offered by counsel for the applicant ..." was insufficient, stated:

[I]n *Baker*, we did not reverse the action of the Montgomery County Council in granting a reclassification because the evidence before it was given by applicant's attorney, but because there was no evidence produced to establish that there had been a change in conditions since the last comprehensive rezoning resulting in a change in the character of the neighborhood to justify the rezoning, there being no contention in *Baker* that there had been a mistake in the original zoning. *Evidence produced before the legislative body may be through the attorney for the applicant, there being no disqualification of counsel for the applicant, as such, to give evidence.*

*Cason, supra*, 261 Md. at 708, 276 A.2d 661 (emphasis supplied).

It is not clear, in either *Cason* or *Baker*, that the attorney who "gave evidence" or "testified" did so under oath as a witness, or whether the information offered by counsel was by way of statement or argument.

This Court had the opportunity to consider the effect of counsel as witness in *Richmarr v. American PCS*, 117 Md. App. 607, 701 A.2d 879 (1997). After observing that "[t]he final 'witness' in the applicant's case-in-chief ... was its attorney," Judge Harrell then offered the following footnote:

The transcript of the 22 August 1995 hearing did not list APC's attorney as one of the counsel entering their appearance.... She was listed as a witness, though she clearly identified herself as APC's engaged counsel for purposes of the special exception petition. All prospective witnesses were sworn en mass at the beginning of the hearing. It is by no means clear that she testified as a witness, rather than offering argument as attorneys are inclined to do. Even as a witness, no particular field of expertise, such as

urban or land planning, was ascribed to or claimed by her. We shall leave to another case a more particularized exploration of whether counsel representing a party in a zoning matter should testify as a fact or opinion witness and, if so, what weight such apparently non-expert opinion testimony should be accorded.

*Richmarr, supra,* 117 Md.App. at 622 n. 11, 701 A.2d 879.

Intertwined with the issue of competency of counsel for a party to testify is the question of the effect of Rule 3.7 of the Maryland Rules of Professional Conduct (MRPC), adopted by the Court of Appeals, effective January 1, 1987, which provides that "(a) [a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness...." The rule contains several exceptions, none of which is applicable here. There is an abundance of cases in which the question has been considered in the context, and usually during the course, of trials of contested matters before a court of record, both civil and criminal, or upon pre-trial motions to disqualify counsel of opposing parties. In Maryland, for example, see *Medical Mutual Liability Ins. Soc'y v. Evans,* 330 Md. 1, 622 A.2d 103 (1993) and *Harris v. David S. Harris, P.A.,* 310 Md. 310, 529 A.2d 356 (1987). In *Columbo v. Puig,* 745 So.2d 1106 (Fla.Dist.Ct.App.1999) the court considered the phrase "at a trial" as contained in the Florida Bar Rule 4–3.7 (similar in wording to MRPC 3.7) and distinguished pre-trial and post-trial procedure from the trial on the merits. Generally, see Alois Valerian Gross, Annotation, *Attorney as Witness for Client in Civil Proceedings,* 35 A.L.R.4th 810 (1985).

However, there is a dearth of cases relating to the issue before us here—whether an attorney for a party should give evidence on behalf of that client at an administrative hearing. In addition to *Baker, Cason,* and *Richmarr,* referred to, *supra,* courts in other jurisdictions have reached disparate results. In *Robinhood Trails Neighbors v. Winston–Salem Zoning Bd.,* 44 N.C.App. 539, 261 S.E.2d 520 (1980), the court rejected a contention that evidence given by counsel for the applicant was not competent and could not contribute to satisfaction of the substantial evidence requirement. In *Me-*

*bane v. Iowa Mut. Ins. Co.*, 28 N.C.App. 27, 220 S.E.2d 623 (1975), the court held the attorney—witness to be competent to testify for a client/party before a local administrative agency, but discouraged the practice in light of the code of professional responsibility.

The American Bar Association Code of Professional Ethics was adopted by the Court of Appeals in 1970 and codified as Maryland Rule 1230. Subsequently, as we have noted, the Court adopted the present MRPC to be effective January 1, 1987. Md. Rules, Appendix, Rules of Professional Conduct, editor's note (2002). The precursor to current Rule 3.7 in the 1970 Code of Professional Conduct was Disciplinary Rule (DR) 5–102(B), which required that

> [a] lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify....

Thereafter are set forth essentially the same exceptions that attach to present Rule 3.7, none of which are applicable to the case *sub judice.*

■ We point out the existence, in 1971, of a rule of similar import to present Rule 3.7 to demonstrate that, at the time that the decision in *Cason v. Board of County Comm'rs, supra,* authorized by Judge Wilson K. Barnes, came down on May 5, 1971, potential disqualification of counsel as witness was considered and rejected. It is presumed that judges know and apply the law. *North River Ins. Co. v. Mayor & City Council of Baltimore,* 343 Md. 34, 90, 680 A.2d 480 (1996). That doctrine can be expanded to a presumption that judges likewise are cognizant of the Rules of Professional Conduct.

Reported cases, and the Rules of Professional Conduct, draw a distinction between counsel's conduct in trials before courts of record and hearings conducted by legislative or adjudicatory bodies. A "trial" is "a judicial examination and determination of issues between parties to an action." BLACK'S LAW DICTIONARY 1348 (5th ed.1979) (quoting *Gulf, C. &*

*S.F. Ry. Co. v. Smith,* 270 P.2d 629, 633 (Okla.1954)). A "hearing", in comparison, is a "proceeding of relative formality ... with definite issues of fact or of law to be tried. It is frequently used in a broader and more popular significance to describe whatever takes place before magistrates ... and to hearing before administrative agencies." *Id.* at 649.

The comment to MRPC 3.9 notes that

[i]n representation before bodies such as ... executive and administrative agencies ... lawyers present facts, formulate issues and advance argument in the matters under consideration ... [l]egislatures and administrative agencies have a right to expect lawyers to deal with them as they deal with courts.

Md. Rules, Appendix, Rules of Professional Conduct, Rule 3.9 cmt. (2002).

■■ We conclude, therefore, that there exists a distinction between a "trial" and a "hearing" in the applicability of the Rules of Professional Conduct. We further conclude that the MRPC does not preclude the giving of evidence by an attorney of record for a party before an administrative agency. However, we do not say that the evidence given by an attorney in those circumstances does not have to be under oath, or that it can be given by way of statement or narrative as an advocate, rather than as a sworn witness. It is imperative that evidence given before an adjudicatory body be under oath, whether from an attorney or lay person, a lay witness or an expert witness.

■ We cannot conclude from the record that Schlossberg was sworn as a witness and that the words he spoke were spoken under oath. Because the record does not tell us that he was a sworn witness, we conclude that he was not. Therefore, we consider what he told the Board to have been argument and not evidence that the Board ought to have considered in its fact finding function. Nor, in fact, can we ascertain from the transcript who among the other persons who "testified" was sworn as a witness.

■ Having discounted the Schlossberg narrative as evidence, we again examine the record to determine what, in fact, was presented to the Board as evidence. We, and the Board, are left only with the observations of Townsley who, as we have noted, did not offer substantive evidence about "... whether there are facts and circumstances that show that the particular use proposed ... would have any adverse effects above and beyond those inherently associated with such a special exception use...." *Schultz, supra,* 291 Md. at 11, 432 A.2d 1319. While Foxshire met its burden of production, it clearly failed in meeting its burden of persuasion. See *Angelini v. Harford County,* 144 Md.App. 369, 798 A.2d 26 (2002).

Our position is consistent with this Court's opinion in *Chester Haven Beach Partnership v. Board of Appeals of Queen Anne's County,* 103 Md.App. 324, 653 A.2d 532 (1995). There, the local board of appeals denied an application for variance under the local zoning ordinance. At the hearing before the board of appeals, most of the information presented to the board was by way of an opening statement by counsel for the applicant. The board denied the application and the circuit court affirmed. On appeal, Judge Cathell noted that there was scant evidence before the board to support the applicant's burden of persuasion and, absent sufficient evidence, the opening statement of counsel would not carry the burden of persuasion.

Because we have discounted the Board's reliance upon the "evidence" presented by Foxshire's counsel in opening statement, and because there remains only the scant observations of Townsley, we hold that the evidence before the Board was neither substantial nor sufficient to support its factual findings. Therefore, we shall reverse.

Having done so, we decline to consider whether the Board erred, as a matter of law, in granting appellee's application for special exception.

We recognize that proceedings before administrative agencies are routinely conducted with less formality than are trials in a court of record. The degree of formality will ordinarily

be directly proportional to the complexity of the subject matter before the hearing agency. Or, put another way, one would expect greater formality at a federal cabinet level administrative agency hearing than at a hearing before a municipal zoning commission.

Nonetheless, we observe that the better practice before administrative boards and agencies is for the presiding officer to be certain that each witness is sworn and identified individually as that witness takes the witness chair. It is incumbent upon a presiding officer to maintain an orderly process in the interest of fairness to all parties to the litigation, as well as to persons whose direct, or indirect, interests may be affected by the outcome of the proceedings.

An acceptable alternative to the individual swearing of witnesses would be to administer the oath to all prospective witnesses at the outset of the hearing and to then be certain that each is clearly identified by name at the time they speak. Of course, even that practice presents the risk of a person in a large audience speaking extemporaneously and without having first been sworn. In our experience, we know that it is not uncommon for controversial issues before local administrative agencies, such as zoning boards, liquor boards, etc., to attract large and, sometimes, undisciplined audiences. Because of the informality, and the volatility of the subject matter, members of the audience tend to speak out in a conversational, if not confrontational, way. Many persons attend such hearings intending to be spectators and not participants, but are then overcome with the irresistible urge to speak, as they might at a town meeting. Those not familiar with the administrative process do not realize the significance of maintaining a record. Such spontaneous comments or outbursts have no place in the record and should not be considered as probative evidence on review. In these instances, as well, it is imperative that a presiding officer maintain order and insist upon procedural dignity and fairness.

In all cases it is important that the presiding officer be certain that witnesses are properly sworn and identified and

that the record does not contain unsworn comments by unidentified persons. It is equally important that documents and other exhibits be carefully identified and cataloged in the record.

An accurate record is essential for comprehensive and effective judicial review, both at the trial court and appellate levels, for at each level the scope of review is the same: the reviewing court considers the record made before the board or agency. An orderly and accurate record will facilitate both fairness and judicial economy.

**JUDGMENT OF THE CIRCUIT COURT FOR WASHINGTON COUNTY REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE DECISION OF THE WASHINGTON COUNTY BOARD OF APPEALS.**

**COSTS SHALL BE PAID BY APPELLEES.**